## JEFFREY v. MORAN.

A railroad company in Ohio was reorganized under a statute of that State of April 11, 1861, the sixth section of which provides as follows: "The lien of the mortgages and deeds of trust authorized to be made by this act shall be subject to the lien of judgments recovered against said corporation,—after its reorganization,—for labor thereafter performed for it, or for materials or supplies thereafter furnished to it, or for damages for losses or injuries thereafter suffered or sustained by the misconduct of its agents, or in any action founded on its contracts, or liability as a common carrier thereafter made or incurred." The new company executed, April 1, 1864, a mortgage on its road to secure the payment of the principal and interest of certain bonds. Default having been made in the payment of the interest, a foreclosure suit was instituted, and a decree rendered whereunder a sale of the road was made, which was reported to the court Dec. 2, 1869, and on that day confirmed. The proceeds of the sale were less than the mortgage debt. A. was killed on the road June 22, 1866. His administrator, in a court in one of the counties through which the road passed, recovered, Feb. 28, 1871, judgment against the company for $5,000. In November, 1875, he became a party to the foreclosure suit, and claimed payment out of such proceeds. *Held*, 1. That by the law of Ohio a judgment is a lien from "the first day of the term at which the judgment is rendered," and as before that day the road had been sold and the sale confirmed, no lien by the judgment existed. 2. That there being no lien at law upon the road, there could be none in equity upon the fund arising from the sale.

APPEAL from the Circuit Court of the United States for the Southern District of Ohio.

The facts are stated in the opinion of the court.

*Mr. S. T. Crawford* and *Mr. Thomas S. Young* for the appellant.

*Mr. M. A. Daugherty, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

A corporation existed in Ohio known as the Cincinnati, Wilmington, and Zanesville Railroad Company. It owned and operated a road extending from the city of Zanesville to the village of Morrow in that State. The company became insolvent, and the road was sold on the 3d of June, 1863, under foreclosure proceedings upon a mortgage which the company had given. Charles Moran became the purchaser in trust for the creditors and stockholders. The original company was reorganized on the 11th of March, 1864, pursuant to a statute of the State of April 11, 1861, under the name of the Cincinnati and Zanesville Railroad Company. On the 12th of March, 1864, Moran conveyed to the new company, which thereupon executed to him and W. Shall a mortgage to secure the payment of the principal and interest of certain bonds therein described. This mortgage bore date on the 1st of April, 1864. Default having been made in the payment of the interest accruing on these bonds, Moran, on the 30th of April, 1869, filed a bill of foreclosure in the court below. On the 4th of May following, the road was put by the court into the charge of the officers of the company as receivers. On the 6th of October then next, a final decree was entered, finding the amount due, and ordering the premises to be sold unless it was paid within twenty days.

On the 2d of December following a sale was reported, and on the same day it was confirmed by the court. The proceeds of the sale were largely less than the amount intended to be secured by the mortgage. On the 22d of June, 1866, Zentmeyer, the appellant's intestate, was killed on the road. On the 16th of July, 1867, the appellant, as his administrator, sued the company in the Court of Common Pleas of Clinton County, through which the road passes, and on the 28th of

February, 1871, he recovered a judgment for $5,000. On the 5th of November, 1875, he was made a party to the proceedings in the foreclosure case. He thereupon answered and filed a cross-bill, in the nature of a creditor's bill, claiming to have the judgment paid out of the proceeds of the sale of the road in the hands of Moran. The court decreed against him, and he appealed to this court.

Several objections have been taken to the claim of the cross-bill by the counsel for the respondent, which the view we take of the case renders it unnecessary to consider.

The counsel for the appellant have pressed upon our attention certain provisions of the mortgage under which the road was sold. We think it too clear to require discussion, that they have no application to the point upon which the case must turn. We shall, therefore, pass them by without further remark.

The mortgage was executed under the act before mentioned, of April 11, 1861, and was subject to its provisions. The sixth section of that act is as follows: —

"The lien of the mortgages and deeds of trust authorized to be made by this act shall be subject to the lien of judgments recovered against said corporation — after its reorganization — for labor thereafter performed for it, or for materials or supplies thereafter furnished to it, or for damages for losses or injuries thereafter suffered or sustained by the misconduct of its agents, or in any action founded on its contracts, or liability as a common carrier thereafter made or incurred."

By the law of Ohio, a judgment is a lien upon all "the lands and tenements of the debtor within the county where the judgment is entered, from the first day of the term at which judgment is rendered, . . . but judgments by confession, and judgments rendered at the same term at which the action is commenced, shall bind such lands only from the day on which such judgments are rendered." 2 Rev. Stat. of Ohio, Swan & Cr. 1064. If execution shall not be sued out within five years from the date of the judgment, the latter becomes dormant and the lien expires. Id. 1067. Judgment liens are the creatures of positive law, without which they cannot exist.

A State may regulate them as it deems proper. *Corwin* v. *Benham*, 2 Ohio St. 36. When this judgment was rendered, there was no real estate of any kind in Clinton County belonging to the railroad company. The roadway and all its appurtenances had been sold to Moran under the decree upon the mortgage, and the sale confirmed more than a year before that time. Thereafter the relation of the property to the company was in all respects as if the company had never owned it. A lien by the judgment was, therefore, impossible.

There being no such lien at law upon the road, there could be none in equity touching the fund arising from the sale. *Olcott* v. *Bynum* (17 Wall. 44), cited by the learned counsel for the appellant, does not, therefore, affect the case.

The counsel would have us give the same construction to the terms " the lien of judgments recovered against the corporation," as if they were " valid claims against the corporation," &c. The language of the statute is clear and explicit. It has a specific meaning in the jurisprudence of Ohio, and seems to have been chosen, *ex industria*, to express exactly the category it defines. There is as much difference with respect to the property between a claim secured by a judgment lien, and one not so secured, as there is between a demand secured by mortgage, and one not secured at all. In such cases the mortgage and the judgment lien are equivalents. In both the binding effect is the same, and the law prescribes the consequences. Here, if the lien had subsisted, though junior in date, it would have had priority over the mortgage. The latter was subject to the statute, and the statute would have given to the lien that effect. No reasoning can successfully maintain that a claim merely in judgment and a judgment *lien* are the same thing in legal effect, any more than in fact. To hold otherwise would be to make the law, and not simply to apply it. The former is beyond the sphere of our authority, the latter is our duty. It is only when a claim has ripened into a judgment where there is property to be bound by it, that a lien can subsist. This element is indispensable under the law to such a result. If the legislature intended that a judgment — not a lien on the mortgaged premises — should have the same effect as one that was such lien, it would have been easy to say so, and

this would doubtless have been done. No word stretching or bending can make the language employed touch the fund in dispute.

It does not appear that the foreclosure sale, from which Moran derived title, was made in the process of another reorganization under the statute. If this were so, the last clause of the first section would control the rights of the parties. It is there declared that "every such agreement" [for reorganization] "shall provide that the unsecured debts of the company incurred for repairs or running expenses shall be paid in money or bonds of the reorganized company, as hereinafter provided; said bonds to be of the highest class issued. A copy of the terms of said agreement shall be filed in said court before the rendition of said decree." But as the mortgagees did not avail themselves of the act, they are not bound by its requirements. This clause, nevertheless, throws light upon the subject we have been considering, and, therefore, we refer to it in that connection.

*Decree affirmed.*