JULIAN, Sheriff, et al. v. CENTRAL TRUST CO. OF NEW YORK et al.

(Circuit Court of Appeals, Fourth Circuit. May 8, 1902.)

No. 438.

**1. RAILROADS—EFFECT OF SALE UNDER FORECLOSURE.**

A railroad company of North Carolina executed a mortgage on all its property and franchises, as authorized by law, the effect of which, under the law of the state, was to convey the legal title to the property to the mortgagee, leaving in the company only the equity of re-

demption. Subsequently, it executed a second mortgage covering the same property and franchises, which was foreclosed, a sale was made under the decree and confirmed, and the purchaser put in possession. Afterward, a judgment was rendered against the company on a cause of action which arose subsequent to the foreclosure sale, and the sheriff levied an execution issued thereon on the ·property and franchises so sold and conveyed, and advertised the same for sale. *Held*, that there was no estate, right, or interest in such property or franchises remaining in the mortgagor upon which the judgment could operate, and that the action of the sheriff was illegal, and entitled the owner of the property to an injunction to restrain its sale.

**2.** SAME—VALIDITY OF SALE—POWER OF PURCHASER TO HOLD PROPERTY.

Neither the mortgagor company, which was a party to the foreclosure sale and received the benefit of the purchase money, nor the judgment creditor, whose claim arose thereafter, could set up the claim that the property did not pass by such sale because the purchaser was a foreign corporation not authorized to hold railroad property in the state; both being estopped by the decree of confirmation, and the question of the purchasers' power being one which could only be raised by the state.

**8.** FEDERAL COURTS—INJUNCTION—STAYING PROCEEDINGS OF STATE COURTS.

Rev. St. § 720, which prohibits a federal court from granting an injunction to stay proceedings in a state court, has no application to the granting of an injunction to restrain a sheriff from selling, under an execution from a state court, property of a third person who was not a party to the judgment, in which he is not acting under the process of the state court, but in abuse of it, and as a trespasser.[1]

**4.** RAILROADS—EFFECT OF SALE UNDER FORECLOSURE—NORTH CAROLINA STATUTE.

Code N. C. § 1255, providing that a judgment against a corporation for a tort shall take precedence over a prior mortgage upon its property, does not operate to render railroad property in the hands of a purchaser at foreclosure sale subject to a judgment recovered against the mortgagor for a tort committed after the sale.

Appeal from the Circuit Court of the United States for the Western District of North Carolina.

See 39 C. C. A. 126, 98 Fed. 489; 47 C. C. A. 374, 108 Fed. 929.

This case comes up on appeal from the decree of the circuit court of the United States for the Western district of North Carolina, granting an injunction.

The bill of complaint was filed by the Central Trust Company, a corporation of the state of New York, and the Southern Railway Company, a corporation of the state of Virginia. It was a supplemental bill, or, more properly, a bill in the nature of a supplemental bill, to a bill theretofore filed in the same court by the Central Trust Company of New York, the same complainant, against the Western North Carolina Railroad Company, a corporation of the state of North Carolina, et al., to which proceedings the Southern Railway Company had been made a party, as purchaser under a decree made therein. The defendant to this bill was David R. Julian, sheriff of Rowan county, N. C., a citizen and resident of the state of North Carolina. He demurred to the bill, and his ·demurrer, claiming that he acted solely in his official capacity, having been overruled, Mrs. Clemye James, administratrix, and Fannie E. Howard, administratrix, were also added as parties defendant. The facts disclosed by the pleadings are these:

W. A. James and John H. A. Howard, the one an engineer and the other a fireman, both in the service of the Southern Railway Company, and whilst in the actual employment of that company, lost their lives on 17th November, 1896, on the railroad of that company known as the Western North Carolina Railroad. Thereupon separate actions were brought in the superior court of Rowan county, N. C., on the 30th January, 1897, by Mrs. Clemye James,

[1] See Courts, vol. 13, Cent. Dig. §§ 1418, 1422.

who had administered upon the estate of W. A. James, and Mrs. Fannie E. Howard, who had administered on the estate of John H. A. Howard, against the Western North Carolina Railroad Company, a corporation of the state of North Carolina, wholly distinct from the Southern Railway Company, and which was not a party thereto, seeking damages. In these actions verdicts were rendered on 21st February, 1898, against the Western North Carolina Railroad Company, one in favor of Mrs. Clemye James, administratrix, in the sum of $15,000, and one in favor of Mrs. Fannie E. Howard, administratrix, in the sum of $5,000. Judgments were entered on these verdicts, and executions were issued, and placed in the hands of D. R. Julian, who then was and is now sheriff of Rowan county, N. C. Each execution, after reciting the judgment, proceeds as follows: "You are therefore commanded, as often before, to satisfy the said judgment out of the personal property of the said defendant [the Western North Carolina Railroad Company], within your county, or, if sufficient personal property cannot be found, then out of the real property of the defendant, and out of the corporate property, real and personal, of the said defendant, including its corporate franchises, corporate rights, privileges, powers, immunities, and all its appurtenances belonging or in anywise connected with or appertaining to it as a body corporate, as owned and held by it on the day when the said judgment was so docketed in said county of Rowan, or at any time thereafter, in whose hands soever the same may be." The execution states that the judgment was rendered on 21st February, 1898, and is dated itself 3d September, 1901. The sheriff proceeded under said execution, and advertised for sale the property levied on as follows:

"Sale of the Western North Carolina Railroad under Execution.

"By virtue of execution issuing from the superior court of Rowan county, North Carolina, one in favor of Clemye James, admrx. of W. A. James, for $15,000, interest and costs, and the other in favor of Fannie E. Howard, admrx. of John H. A. Howard, for $5,000, interest and costs, upon judgments duly docketed in the superior court of said county of Rowan, reference hereby being had to the said judgments for a fuller description thereof, and by virtue of the levy made thereunder, the undersigned, as sheriff of Rowan county, state of North Carolina, will sell, agreeably to the laws of the state in this behalf provided, at public auction, to the highest bidder, at the court-house door in Salisbury, on Monday the 7th day of October, A. D. 1901, at the hour of 12 m., all and singular, the corporate property of the defendant, the Western North Carolina Railroad, existing in the state of North Carolina, including its corporate franchises, rights, privileges, immunities, easements, and appurtenances of every kind appertaining, belonging to, or in anywise connected therewith, or issuing out of and relating to the said the Western North Carolina Railroad, together with all of its property in the state of North Carolina, and including its roadbed and right of way, its real estate acquired and owned for railroad purposes, its stations, depots, grounds, its railway tracks, switches, sidings, bridges, fences, turntables, water tanks, viaducts, culverts, superstructures, passenger, freight, and other houses, machine shops, buildings and fixtures, the said railroad extending from the town of Salisbury, through Statesville, Newton, Hickory, Morganton, Marion, Asheville, to Paint Rock, in Madison county, and from Asheville westward, by way of Waynesville, to Murphy, in Cherokee county —reference being had for a further description of said road, and its property, rights, and franchises, to the charter of the said road, and the amendments thereto enacted from time to time by the general assembly of North Carolina."

Under section 674 of the Code of North Carolina, it is provided that:

"The officer making such a sale shall, by deed, convey to the purchaser all the immunities and privileges which by law belong to the corporation, so far as relates to the right of demanding fare and toll, and the officer shall, immediately after such sale, deliver to the purchaser possession of all the corporate real property connected with the franchise belonging to such corporation in whatever county the same may be situated, and the purchaser

may thereupon demand and receive for his own use all the fare and toll which may accrue within the time limited by the terms of purchase in the same manner and under the same regulations as such corporation was before authorized to demand and receive."

It was stated at the bar that the executions for the recovery of $20,000 in the aggregate were levied on property valued at $5,000,000.

The purpose and prayer of the bill of complaint were for an injunction against this action on the part of David R. Julian, the sheriff.

A. C. Avery (B. F. Long and Lee S. Overman, on the briefs), for appellants.

Charles Price, for appellees.

Before GOFF and SIMONTON, Circuit Judges, and KELLER, District Judge.

SIMONTON, Circuit Judge (after stating the facts). The first question is: Was the property so levied upon and advertised for sale corporate property of the Western North Carolina Railroad Company, as owned and held by it on the day when said judgment was so docketed in said county of Rowan, or at any time thereafter, in whose hands soever the same may be? The Western North Carolina Railroad Company was created a corporation of that state by its legislature. The sovereign power made of the corporators a single entity, and conferred upon them the franchises of acting as a person. This new person, creature of the law, and existing through the grace of and at the will of the sovereign, was then clothed with certain powers, and granted certain privileges. These are called franchises. They were: First. To construct a railroad from Salisbury to Asheville, etc. Second. To this end, it was empowered to acquire and hold lands for railroad purposes, by purchase, gift, or by condemnation proceedings, in the exercise of eminent domain. Third. Over the road so constructed, it was endowed with the franchise of acting as a common carrier of persons and property, and to demand and receive toll and fare therefor. The franchise to be a corporation is its life. It is inseparable from it. When it surrenders it, or is deprived of it, it parts with its existence. But with regard to the other franchises mentioned, these are not inseparable from its existence. They constitute its property. They are distinct from the franchise to be a corporation. They may be mortgaged without it, and may pass to a purchaser by sale; may be levied upon and sold under execution. Railroad Co. v. Berry, 112 U. S. 610, 5 Sup. Ct. 299, 28 L. Ed. 831. Under the laws of North Carolina a corporation can sell and transfer its franchises. Code N. C. §§ 671, 673, 675. And the franchise, so far as it relates to the receiving of fare or tolls, may be sold under execution, with or without the other property of the corporation. Code N. C. §§ 671, 672. Pursuing the power conferred upon it by its charter, the Western North Carolina Railroad executed a mortgage of its property and franchises to the Central Trust Company of New York, on 1st day of September, 1884, to secure an amount of bonds not exceeding $12,500 for each mile of said road. This mortgage having been executed, the legal title, under the operation of law in North Carolina, passed to the

Central Trust Company of New York, leaving in the Western North Carolina Railroad Company the equity of redemption only. Hemphill v. Ross, 66 N. C. 477; Ellis v. Hussey, Id. 501; Isler v. Koonce, 81 N. C. 378; Williams v. Teachey, 85 N. C. 402, 405; Parker v. Beasley, 116 N. C. 1, 21 S. E. 955, 33 L. R. A. 231. The mortgagee, being the legal owner of the land mortgaged, is the person to whom notice must be given by the sheriff of a levy and sale of such land for unpaid taxes. Whitehurst v. Gaskill, 69 N. C. 449, 12 Am. Rep. 655, cited and approved in Re Macay, 84 N. C. 63; Hill v. Nicholson, 92 N. C. 24. On the 2d day of September, 1884, the Western North Carolina Railroad Company executed to the same Central Trust Company of New York its second mortgage, being the mortgage of this equity of redemption, to secure two bonds, one in the sum of $3,090,000, and the other in the sum of $1,020,000. Default having been made on the bonds secured by this second mortgage, the Central Trust Company of New York, the mortgagee, filed its bill of foreclosure of this second mortgage, in the circuit court of the United States for the Western district of North Carolina, on 20th April, 1894, to which bill the Western North Carolina Railroad Company and its lessee were made parties defendant. Answers were duly filed and, the cause being at issue, proceedings were had thereunder, whereby a decree for the foreclosure of said mortgage was made, and an order for the sale of the interests mentioned in said mortgage, and that by said sale all right and equity of redemption in the Western North Carolina Railroad Company, and all persons claiming by, through, or under it would be forever barred and foreclosed. It goes without saying that the right to execute a mortgage carried with it the right of the mortgagee to obtain foreclosure of such mortgage. New Orleans, S. F. & L. R. Co. v. Delaware, 114 U. S. 501, 5 Sup. Ct. 1009, 29 L. Ed. 244. After due advertisement, this sale was had under the order of that court. The Southern Railway Company became the purchaser. Upon report of sale, it was confirmed on 22d August, 1894. The order of confirmation is in these words, after reciting that the special master execute his conveyance to the purchaser:

"Upon the delivery of said conveyance by the special master, the Southern Railway Company shall fully possess and be invested with all of the estate, right, title, and interest in, to, and of such railroad, equipment, property, and franchises so sold under the decree of this court as the absolute owner thereof, to have and to hold the same to it and its successors and assigns, forever."

This conveyance was duly executed and recorded. The purchaser was put into possession. To all these proceedings the Central Trust Company, holder of the first mortgage, was a party, moving for and assenting to all the decrees therein, recognizing the Southern Railway Company as the owner of the equity of redemption, and as the party liable for the payment of the bonds first issued under the first mortgage. It thus appears that the Western North Carolina Railroad Company, originally the owner of this property, with authority to alien, sell, or mortgage the same, then the mortgagor, then the owner of the equity of redemption, its only means of procuring release of

the mortgage, then the mortgagor of this equity of redemption, by a decree of a court of competent jurisdiction, in a suit to which it was a party, appearing and answering, was forever debarred and foreclosed of all right, title, interest, and estate at law therein, and of all right and equity therein, including this equity of redemption. This being so, it did not have, on 21st February, 1898 (the day on which the judgment upon which the execution complained of in this case was rendered), any interest, right, estate, or property in the road levied upon or in its equipment, rolling stock, franchises, or property of any description. All of these had become and were vested in the Southern Railway Company, the purchaser, under the decree of the circuit court of the United States for the Western district of North Carolina. The sheriff, under his precept, had no right to levy upon and advertise the same for sale. A purchaser at a sale under execution takes only the right of the debtor at the time the judgment was entered. A judgment at law does not overreach a prior equity of a third person acquired bona fide for valuable consideration. Georgetown v. Smith, 4 Cranch, C. C. 91, Fed. Cas. No. 5,347. The supreme court of the United States, in Simmons v. Railroad Co., 159 U. S. 288, 289, 16 Sup. Ct. 5, 40 L. Ed. 150, quoted with approval Lansing v. Goelet, 9 Cow. 346, to the effect that a judicial sale of the estate under the decree of the court, if the court has the power to make a decree, whether it be in the form of a decree of sale preceded by a formal decree of foreclosure, or in the form of a decree of sale without a formal decree of foreclosure, effectually bars the right of the mortgagor to redeem, and the purchaser will hold it under the title he acquires to it by virtue of the sale and conveyance he receives from the master, free and discharged from the equity of redemption. They also quote with approval 3 Pom. Eq. Jur. § 1228, as follows:

"The sale, under a valid decree, immediately cuts off, bars, and forecloses the rights of the mortgagor and of all subsequent grantees, owners, incumbrancers, and other persons interested, who were made parties defendant, and of all grantees, owners and incumbrancers subsequent to the filing of a notice of lis pendens, although not made defendants."

The case of Jeffrey v. Moran, 101 U. S. 286, 25 L. Ed. 785, resembles very much the case at bar. A railroad company of Ohio was sold under foreclosure proceedings 3d June, 1863, and was purchased by Moran. It was reorganized on 11th March, 1864; and on 12th March, 1864, Moran conveyed the whole railroad property to the new company, taking bonds and a mortgage for the purchase money. The bonds not having been paid, Moran filed his bill for foreclosure 30th April, 1869. On 6th October, 1869, sale was ordered, Moran purchased at the sale, and it was confirmed on 2d December, 1869. On 22d June, 1866, one Zentmeyer was killed on the railroad. His administrator sued the road, and got judgment 28th February, 1871, a year and some months after the sale of the road. The administrator intervened, and claimed part of the proceeds of sale. The mortgage to Moran had been executed subject to an act of 11th April, 1861, as follows:

"The lien of mortgages and deeds of trust authorized by this act, shall be subject to the lien of judgments recovered against said corporation after

its reorganization, for labor thereafter performed for it or for materials or supplies thereafter furnished to it, or for damages for losses or injuries thereafter suffered or sustained by misconduct of its agents or in any action founded on its contracts or liabilities as a common carrier, thereafter made or incurred." 58 Ohio Laws, p. 72.

On this state of facts, the court says:

"When this judgment was rendered, there was no real estate of any kind in Clinton county belonging to the railroad company. The road, with all its appurtenances, had been sold to Moran under a decree upon the mortgage and sale, confirmed more than a year before that time. Thereafter the relation of the property to the company was in all respects as if the company had never owned it. A lien by judgment, therefore, was impossible."

The act of the sheriff in levying on this property, clearly, was illegal. And inasmuch as under the law of North Carolina it would have been his duty to have put the purchaser into immediate possession, and into the enjoyment and use of all the franchises of the company, and so work irreparable injury to the Southern Railway, the owner in possession, the court, having right and authority to do so, was bound to issue its writ of injunction. Marshall v. Holmes, 141 U. S. 596, 12 Sup. Ct. 62, 35 L. Ed. 870; Barrow v. Hunton, 99 U. S. 80, 25 L. Ed. 407.

It is insisted upon in argument that the Southern Railway Company, being a corporation of the state of Virginia, cannot hold railroad property in North Carolina. This question cannot arise in this discussion. Whatever may be the law in this regard, the title of the Southern Railway cannot be disputed by the Western North Carolina Railroad Company, or any person claiming by, through, or under it. The decree of the circuit court of the United States for the Western district of North Carolina, confirming the sale in a cause to which the Western North Carolina Railroad Company was a party, estops it. The purchase money was paid, and was applied to the debts of this railroad. It would be monstrous to affirm that, in despite of this, the railroad property and its franchises still remained in the Western North Carolina Railroad Company, subject to its debts, to its obligations incurred after the sale. If the Southern Railway Company holds this property contrary to the will of the sovereign power of the state, it is for the state to interfere. No private individual can usurp its prerogative. Bank v. Matthews, 98 U. S. 628, 25 L. Ed. 188; Leazure v. Hilleyas, 7 Serg. & R. 313.

The only remaining question is, can the circuit court of the United States interfere with this state officer, or is it precluded by the provisions of section 720 of the Revised Statutes of the United States? It will be observed that no question is made upon the validity of the judgments of James, administratrix, and of Howard, administratrix, in the state court. We do not sit to review these judgments, nor have we the right to do so. The case made shows that Julian, the sheriff, is attempting to sell, for the satisfaction of judgments against the Western North Carolina Railroad Company, property in which that company has no interest or estate whatsoever. He has been enjoined, not from or because of the use of process, but because of the abuse of process. When he seeks to subject the property of the Southern Railway Company, by levying upon it under a judgment

to which it was not a party, for the payment of the judgment against the Western North Carolina Railroad Company, he goes outside of his official duty, and becomes a bald trespasser. The supreme court of North Carolina has held in a current of cases, such as Logan v. Railroad Co., 116 N. C. 940, 21 S. E. 959, that the lessor of a railroad cannot devest himself of the public duties cast upon him by his charter by transferring them to another, without the express sanction of the state; that, so, a lessor is liable for any injury or trespass committed by his lessee, and his property may be levied upon for damages. This must proceed upon the idea that the property is still the property of the lessor, and so liable for his obligations. But it cannot be held that the property of the lessee can be levied upon and sold under a judgment against the lessor, to which the lessee was not a party. Such a proceeding would be abhorrent to all law.

It is said, also, that under the statute law of North Carolina judgments for torts committed by a mortgagor take precedence of the lien of any mortgage executed by the mortgagor upon his property. Code, § 1255. This, doubtless, is so as to any property held by the mortgagor at the time the tort was committed. But can it be said that the commission of a tort and judgment had thereon shall have such retroactive operation as to spring and create a lien upon property which, by operation of law, had passed out of the possession, ownership, and control of the mortgagor, long before the tort was committed? Surely not. Jeffrey v. Moran, 101 U. S. 286, 25 L. Ed. 785, quoted supra. Under authority of the legislature the Western North Carolina Railroad Company mortgaged its property and franchises to the Central Trust Company of New York. These mortgages included the whole estate of the mortgagor, the fee under the first mortgage, subject to the equity of redemption, and the equity of redemption itself under the second mortgage. Until this equity of redemption was exercised, the fee remained in the first mortgagee. This equity of redemption was foreclosed, and the Western North Carolina Railroad Company lost it; was forever debarred from setting it up and exercising it. All of these proceedings were legal,—sanctioned by the action of the legislature. The Southern Railway Company purchased this equity of redemption and the franchises sold, and thenceforward, going into possession, claimed to be the owner thereof. Its rights were derived from proceedings inaugurated by creditors, establishing their rights under the mortgage, making these defeasible rights absolute. It does not claim under, but against, the Western North Carolina Railroad Company. It conducts its road in no sense as the agent of this railroad company. There is no privity between it and this railroad company which can make its property liable for the obligations of, or subject to levy under a judgment against, the Western North Carolina Railroad Company.

The decree of the circuit court is affirmed.