ALVIN B. RUBIN, Circuit Judge:
The District Court for the Northern District of Texas enjoined parties to litigation before it from “filing a case under the Bankruptcy Code in any district other than the Northern District of Texas, Dallas Division, without [its] prior approval,” and ordered two parties to that litigation and a corporate subsidiary of one of the parties, each of which had filed petitions under chapter 11 of the Bankruptcy Code in the Eastern District of Louisiana, to file a motion to transfer these cases to the bankruptcy court in Dallas. We hold that this court has jurisdiction of the appeal,., deny the request for a stay, dismiss the appeal for lack of merit, and direct the transfer of the bankruptcy cases to the Northern District of Texas.
I.
Placid Oil Company, Penrod Drilling Company, three trust estates, named the William Herbert Hunt Trust Estate, the Nelson Bunker Hunt Trust Estate, and the Lamar Hunt Trust Estate (the “Trust Estates”), which own stock in Placid and Pen-rod, and the trustees and certain beneficiaries of those Trust Estates, all of whom we refer to collectively as the Hunt interests, sued twenty-three banks that had made loans to Penrod, Placid, and the Trust Estates under separate credit agreements. At the time the action was filed, Penrod and Placid together owed the banks a total of $1.5 billion. The complaint filed in the District Court for the Northern District of Texas alleges that the banks had committed a number of wrongful acts in their business relations with the borrowers, including unlawful and inequitable conduct, breaches of fiduciary duty, fraud, and antitrust violations. The Hunt interests sought damages, declaratory relief, and reformation or rescission of two credit agreements.
After almost all of the banks had answered the complaint and had filed counter *1065 claims or third-party actions or both, seeking recovery of the money loaned by them and asserting other claims, the banks moved on July 28, 1986 for a temporary restraining order enjoining all parties from initiating any action or proceeding in any forum other than the Northern District of Texas on any matter related to that action without prior approval of the district court. The district judge promptly convened a conference on the banks’ application the same day, with only two hours notice to the Hunts’ counsel. After hearing and considering the arguments of counsel, the district court entered a temporary restraining order, which provided:
Each party to the litigation, and all other persons acting in concert therewith, is enjoined and restrained from initiating any proceedings in any forum other than this Court on any matter or issue related to this action, without prior approval of this Court. (Emphasis added.)
The next day Placid and Penrod filed an antitrust action against the banks, alleging that the banks had conspired to fix prices and to monopolize the offshore contract drilling industry, and that the banks’ efforts to collect on their loans were motivated by a desire to destroy Penrod and Placid in furtherance of this scheme.
Counsel for all parties thereafter agreed that the court would enter a preliminary injunction that would continue the terms of the temporary restraining order in effect “until a final judgment is entered in [the first] action from which there is no right of appeal.” The court then entered such an order on August 15.
Soon thereafter, pursuant to Texas law which permits nonjudicial foreclosure, some of the banks filed notices of foreclosure on some of the properties pledged to secure loans to them. The Hunt interests then sought to enjoin the banks from foreclosing on any collateral pledged under the credit agreements. After a hearing, the district court denied the motion.
Faced with the prospect of foreclosure on their assets, Placid, Placid Building and Service Company (“PBSC”) — a wholly owned subsidiary of Placid that was not a party to the two lawsuits — and one of the three trusts, the William Herbert Hunt Trust Estate, each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana at New Orleans. The effect of the filings was to prevent the foreclosure sales that the district court had refused to enjoin. Placid, PBSC, and the William Herbert Hunt Trust Estate did not request or obtain approval from the District Court for the Northern District of Texas to file the Chapter 11 petition in Louisiana.
The banks promptly resorted to the district court, and, after a conference during which counsel for the plaintiffs and the banks were heard, that court on August 29 entered orders that:
(a) enjoined the plaintiffs from taking any actions “in furtherance of filing a case under the Bankruptcy Code in any district other than the Northern District of Texas, Dallas Division, without prior approval of this Court”;'
(b) enjoined Penrod from filing a bankruptcy case in any district other than the Northern District of Texas, Dallas Division, without prior approval of the district court; and
(c) required Placid, PBSC, the William Herbert Hunt Trust Estate, and their counsel to show cause why they should not be required to obtain the transfer of their Chapter 11 cases to the bankruptcy court in Dallas.
After a hearing, the district court filed a memorandum opinion and order on September 4, holding that the Chapter 11 filings were in direct contravention of its August 15 order, to which counsel had agreed. The court therefore required Placid, PBSC, the William Herbert Hunt Trust Estate, and their counsel to take all actions necessary to transfer the bankruptcy cases filed in Louisiana to the bankruptcy court in Dallas.
*1066 II.
The notice of appeal seeks review of three orders: (1) the August 15, 1986 order, entered on the basis of counsels’ agreement; (2) the August 29, 1986 order continuing that order in effect and enjoining further proceedings elsewhere than in Dallas; and (3) the September 4, 1986 order directing transfer of the bankruptcy cases.
The banks contend that none of these orders is appealable. The banks contend first that a party will not be heard to appeal the propriety of an order to which it agreed. That is correct,[1] but this objection relates to whether the appellate court will grant relief, and is not a basis to refuse jurisdiction.[2] Even if the August 15 order is invulnerable because it was entered by consent, we have jurisdiction of an appeal from it.
The banks contend that the two later orders are nonappealable because they simply “reiterate and specifically enforce” the August 15 order. This again relates to the merits of the appeal, not to our jurisdiction, but in either event, the argument begs the question: whether the district court exceeded the terms of the earlier order and went beyond what had been agreed by the parties.
The third line of defense to appealability is the contention that, while the Judicial Code[3] authorizes appeals from interlocutory orders that grant or deny an injunction, this statutory provision does not authorize appeals from orders that compel or restrain conduct pursuant to the court’s authority to control proceedings before it, even if the order is cast in injunctive terms. The proposition is correct but the conclusion sought to be drawn from it is a nonsequitur.
In International Products Corp. v. Koons[4] the Court of Appeals for the Second Circuit held nonappealable a district court’s order enjoining the defendants from publishing or disclosing any of the testimony, documents or writings contained or referred to in certain depositions. The basis for that decision, however, is that the conduct enjoined “concern[ed] the conduct of the parties or their counsel, unrelated to the substantive issues in the action,” and that the injunction did not “give or aid in giving some or all of the substantive relief sought by a complainant.”[5] Here, the substantive relief sought by the banks in their response to the suit was a temporary restraining order, the order that was later converted into the preliminary injunction. The injunction was designed to further effective judicial administration in reaching trial of and decision on the substantive issues, for, with two complex cases already pending, the possible proliferation of suits in other jurisdictions, raising related issues, would render discovery more difficult, increase expense, magnify administrative problems, and delay as well as complicate eventual trial. The injunction did not therefore, as in Koons, relate to a collateral matter. The other authorities cited to support nonappealability are even more remote, dealing typically with matters relating to discovery and conduct of the pending proceedings.[6]
The banks also seek to distinguish between “orders [that] enjoin the commencement of proceedings in other forums,” which they presumably concede for the purposes of that argument to be ap- *1067 pealable, and orders that require prior court approval for such action. That seems to us to be a distinction without difference.
Accordingly, we deny the motion to dismiss the appeal for want of jurisdiction.
IIL
The criteria for granting a stay pending appeal have been so often repeated by us that they are rubric. The party who seeks a stay must show: (1) likelihood of success on the merits, (2) irreparable injury if the stay is not granted, (3) absence of substantial harm to the other parties from granting the stay, and (4) service to the public interest from granting the stay.[7]
The motion fails on the first requirement for the Hunt interests have not shown that they will likely succeed on the merits. The district court found as a fact that counsel for the Hunt interests understood when they agreed to the August 15, 1986 order that it precluded the filing of bankruptcy proceedings in any forum other than the Northern District of Texas without prior approval. Counsel for the Hunt interests have filed affidavits asserting the contrary, and the transcript of the proceedings in the district court does not conclusively establish the facts found, but a colloquy between the court, at least one of the counsel for the Hunt interests, and at least one of the counsel for the banks at the time the court entered the July 29 restraining order, which was, of course, identical in terms to the August 15 injunction, provides a substantial basis for the district court’s determination, one that we may not set aside unless it is clearly erroneous.[8] That portion of the transcript is quoted in the footnote.[9] The district court restrained proceedings on “any matter or issue related to this action,” and its interpretation of these words as applying to bankruptcy proceedings affecting the interests of the parties to the legal action is not unwarranted.
The district court did not enforce the August 15 order simply because it had been agreed upon, as a demonstration of judicial determination to enforce the court’s mandate. The court found not only that filing the proceeding in some other forum violated its order but also that the Northern District of Texas was an appropriate venue. The court noted that (1) the Hunt interests had chosen that forum “for two multibillion dollar lawsuits seeking to restructure the debt of” the Chapter 11 petitioners; (2) the principal place of business of Placid is in Dallas, the Trustee of the Chapter 11 Trust Estate is a resident of Texas, and the principal asset of PBSC is in Dallas; (3) judicial economy would be served if all proceedings (the Chapter 11 case will likely include adversary proceedings involving the same issues as those in the district court) were to be maintained in *1068 the same district, like the resolution of discovery disputes; and (4) having the same court decide whether to allow all or part of either civil case to proceed would be more efficient and avoid possible inconsistent results. These findings further support the district court’s conclusion that it not only had power to but should enjoin the prosecution in Louisiana of Chapter 11 proceedings in violation of its earlier order.
IV.
The three Chapter 11 petitioners contend that the September 4 order deprives them of their constitutional and statutory right to file bankruptcy proceedings and an asserted corollary “right” to select the venue for their actions. The order does not of course preclude resort to the bankruptcy courts, but, as interpreted by the district court, requires only that the proceedings be filed in the Northern District of Texas, or that court approval for filing elsewhere be obtained. While the filing in Louisiana was based on the contention by each of the Chapter 11 petitioners that their principal assets are in Louisiana, and that may indeed be true, the Louisiana court is not the only venue, for a bankruptcy petition may also be filed at the principal place of business of the petitioners,[10] and the district court found that the principal place of business of each petitioner is in the Northern District of Texas, a finding that is not challenged on appeal. Venue is a privilege personal to a litigant, and, even when venue is laid in a court where it would otherwise be improper, it may be waived by express agreement or by conduct.[11] The venue provisions relating to bankruptcy are no more sacred.[12] Consent to the August 15 order was in effect consent to comply with it in filing bankruptcy proceedings.
The intervenor, an unofficial committee representing unsecured creditors, asserts that the September 4 order also deprives unsecured creditors of a “right” to be heard and that they would suffer disadvantages if venue is not laid in Louisiana. Unsecured creditors, however, have no right to dictate venue, although they do have a right to be heard on the issue of the propriety of a transfer from one court of proper venue to another. The Chapter 11 petitioners might have elected to file in the Northern District of Texas, and the order creates no greater disadvantage to the unsecured creditors than would such a filing. They will have a right to be heard in the Texas bankruptcy court equal to their right to be heard in the Louisiana bankruptcy court. As unsecured creditors they have a right to have their position considered but they have no right to control the venue in which a Chapter 11 petition is filed.
The three Hunt brothers have each filed affidavits asserting that their counsel had no authority to consent to an order that would restrict in any way their right to file bankruptcy proceedings. Whether counsel for the Hunts exceeded their authority is a matter between the clients and their lawyer. The general appearance of counsel implied authority to act in such matters,[13] and the signature of counsel who were appearing in court to the August 15 order entitled the court to assume that counsel were authorized to do what they did. If counsel acted improvidently, the remedy, if any is available, is to *1069 apply to the district court to modify or set aside the August 15 order.
We need not, and do not here, determine whether the Texas bankruptcy court should retain jurisdiction, for the Bankruptcy Code permits that court to decide motions for transfer in the interests of justice and the convenience of the parties, and, to accomplish those purposes, to transfer the case either to the Eastern District of Louisiana or to some other forum.[14]
V.
Upon the filing of the Chapter 11 proceeding, all other proceedings against each of the Chapter 11 petitioners were automatically stayed.[15] While section 362 of the Bankruptcy Code stays the continuation of a judicial proceeding that was commenced before a commencement of the bankruptcy case, the Texas district court had jurisdiction to determine its applicability to the case pending in the Texas district court, and particularly to enforcement of the order that forbade filing the Chapter 11 proceeding in Louisiana.[16] As the Second Circuit has said in In re Baldwin-United Corp. Litigation, “Whether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending ... and the bankruptcy court.” [17] Certainly that question is likewise within our jurisdiction.
The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment.[18] The stay of pre-petition proceedings enables the bankruptcy court to decide whether it will exercise its power under section 502(b) of the Bankruptcy Code to establish the validity and amount of claims against the debtor or allow another court to do so,[19] thereby preventing a “chaotic and uncontrolled scramble for the debtor’s assets in a variety of uncoordinated proceedings in different courts.”[20] The injunction here affects only the venue of the bankruptcy proceeding, that is, which bankruptcy court decides whether it will hear the pre-petition claims — and does not determine whether the pre-bankruptcy actions brought by the Hunt interests will be heard in a bankruptcy court or a nonbankruptcy court. For this reason, the automatic stay is inapplicable to the district court’s injunction. Unlike the district court in Baldwin-United, which prohibited a party from applying to the bankruptcy court for relief, the District Court for the Northern District of Texas did not misuse its equitable power in issuing the injunction, for this injunction allows unfettered continuation of the Chapter 11 proceedings, albeit in another forum. While the Chapter 11 proceedings were not sham, as were those *1070 considered by the Second Circuit in Meyerson v. Werner,[21] we, like that court, “do not believe ... that § 362 was intended to deprive a federal district court of jurisdiction to deal with circumstances such as these.”[22]
The unsecured creditors who have intervened contend that their interests were injured by the delay that has occurred since the three Chapter 11 proceedings were begun, and that the automatic stay should apply to the district court’s order because changing the venue to Texas would cause further delay and diminish of the debtor’s assets. Transfer to the Northern District of Texas might adversely affect the interests of justice, the convenience of the parties, and the interests of the unsecured creditors. We cannot determine whether or not these matters justify retransfer of the Chapter 11 proceedings to Louisiana in the absence of a record and findings of fact. That is a matter to be decided, at least in the first instance, by the bankruptcy court.
VI.
Each of the parties moved for an expedited appeal and each has briefed the case on the merits, albeit not with the completeness that they would doubtless provide had time permitted. The appeal from the district court’s orders is without merit. Delay in ruling on the merits would only further protract proceedings and would likely occasion doubt on the part of the bankruptcy court and the parties concerning whether the denial of a stay would ultimately be followed by dismissal. Accordingly, we DISMISS the appeal for lack of merit.
This court has the authority under the All Writs Act “to issue all writs necessary or appropriate in aid of” its jurisdiction.[23] The All Writs Act, as well as the Judicial Code, Section 1404(a),[24] gives us authority to order the transfer of the bankruptcy proceedings. In Koehring Co. v. Hyde Construction Co.,[25] the Supreme Court held that section 1404(a), which relates in terms to a district court, does not preclude “an appellate court, where unusual circumstances indicate the necessity thereof, from effecting a transfer by direct order.”[26]
The district court took the only action within its power by ordering the Hunt interests to take action to transfer the Chapter 11 proceedings to the bankruptcy court for the Northern District of Texas. Filing motions, setting hearings in the Louisiana bankruptcy court, and filing further objections to transfer, however, would all occasion delay. It is imperative that authority be vested clearly in a bankruptcy court to issue any needful orders, for the Chapter 11 petitioners must continue as going businesses and the debtor in possession must take steps to conserve the assets of the three Chapter 11 estates. Accordingly, by virtue of our powers as a Court of Appeals having jurisdiction over both courts, and in furtherance of this dismissal, we direct the United States Bankruptcy Court for the Eastern District of Louisiana to transfer the Placid, PBSC, and William Herbert Hunt Trust Estate Chapter 11 cases from that court to the bankruptcy court for the Northern District of Texas, Dallas Division. In doing so, we intimate no opinion concerning what forum is the most appropriate in the interests of justice and for the convenience of the parties. Accordingly, we direct the Bankruptcy Court for the Northern District of Texas to proceed in exactly the same manner as if *1071 the Chapter 11 proceedings had each been initially filed in that jurisdiction and to consider any motion concerning the convenience or propriety of that forum.
Let the mandate issue without delay.

. United States v. Babbitt, 104 U.S. 767, 768, 14 Otto 767, 768, 26 L.Ed. 921 (1882); Pacific R.R. v. Ketchum, 101 U.S. 289, 11 Otto 289, 25 L.Ed. 932 (1880); cf. Ross v. Evans, 325 F.2d 160, 160-61 (5th Cir.1963) (dealing with a temporary restraining order extended by consent); Donovan v. Penn Shipping Co., 429 U.S. 648, 649, 97 S.Ct. 835, 836-37, 51 L.Ed.2d 112 (1977) (per curiam); Krahn v. B.F. Goodrich Co., 559 F.2d 308 (5th Cir.1977).

. Pacific R.R. v. Ketchum, 101 U.S. 289, 295, 11 Otto 289, 295, 25 L.Ed. 932 (1880).

. 28 U.S.C. § 1292(a)(1) (1982).

. 325 F.2d 403 (2d Cir.1963).

. Id. at 406.

. See, e.g., Sporck v. Peil, 759 F.2d 312, 315 n. 4 (3d Cir.), cert. denied, — U.S. -, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985).

. Ruiz v. Estelle, 666 F.2d 854, 856 (5th Cir.1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

. Fed.R.Civ.P. 52(a); Pullman-Standard v. Swint, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

. MR. KRAGE [counsel for the Hunt interests]: If you intended to file some Chapter 7 proceeding under the Federal Bankruptcy law in the Northern District of Texas you don't view your application for temporary injunction to require us to come to Judge Sanders but only if we wanted to file it in Houston or New York or Miami, for example.
MR. JONES [counsel for the banks]: So there is no doubt, I would think you would file it with Judge Sanders.
THE COURT: I did not construe it that way based on what you said. That prohibits any other thing in any Division but in the highly speculative event you wnated [sic] to go into Chapter 7 on the fourteenth floor you do not have to come to me for that.
MR. KRAGE: I wanted to make sure I didn’t have to respond to that because I wouldn’t— because I would not object—
THE COURT: And the reason I am saying that is because that is an arm of this Court so I am interpreting in that way.
MR. KRAGE: That is the way I would, Your Honor. The District Court has—
MR. JONES: He could if he chose to.
THE COURT: I could — I could. Thank you. MR. KRAGE: That is the response of a good lawyer.
MR. JONES: It looks to me like there was something left off of that.

. 28 U.S.C. § 1408 (1982).

. See Hoffman v. Blaski, 363 U.S. 335, 343, 80 S.Ct. 1084, 1089, 4 L.Ed.2d 1254 (1960); In re Fireman's Fund Ins. Cos., 588 F.2d 93 (5th Cir.1979); Brown v. Pyle, 310 F.2d 95, 96-97 (5th Cir.1962); 1 Moore’s Federal Practice ¶ 0.146[6]; cf. Scherk v. Alberto-Culver Co., 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974); Bense v. Interstate Battery Sys. of Am., Inc., 683 F.2d 718 (2d Cir.1982).

. See, e.g., Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202 (3d Cir.), cert. denied, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983).

. Grey v. First Nat'l Bank, 393 F.2d 371, 384 n. 17 (5th Cir.), cert. denied, 393 U.S. 961, 89 S.Ct. 398, 21 L.Ed.2d 374 (1968); Arbuckle Broadcasters, Inc. v. Rockwell Int'l Corp., 513 F.Supp. 412, 418 (N.D.Tex.1981).

. 28 U.S.C. § 1412 (1982); see also 28 U.S.C. § 1404 (1982); 1 Collier on Bankruptcy ¶ 3.02, at 3-126 to 3-128 (15th ed. 1986).

. 11 U.S.C. § 362 reads in pertinent part as follows:
[A] petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of — (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ... (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

. See In re Baldwin-United. Corp. Litigation, 765 F.2d 343, 347 (2d Cir.1985).

. Id. See also SEC v. First Fin. Group of Texas, 645 F.2d 429, 436-40 (5th Cir.1981).

. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787 [hereinafter cited as H.R.Rep. No. 595]; 2 Collier on Bankruptcy ¶ 362.04 (15th ed. 1986).

. See H.R.Rep. No. 595 at 341.

. In re Holtkamp, 669 F.2d 505 (7th Cir.1982). See also Fidelity Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 55 (2d Cir.1976), cert. denied, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); Cornfeld v. Investors Overseas Servs., 471 F.Supp. 1255, 1260 (S.D.N.Y.), aff'd mem., 614 F.2d 1286 (2d Cir.1979).

. 683 F.2d 723 (2d Cir.1982).

. 683 F.2d at 728 (emphasis in original).

. 28 U.S.C. § 1651(a) (1982); see also Meyerson v. Werner, 683 F.2d at 728.

. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division in which it might have been brought." See also Koehring Co. v. Hyde Constr. Co., 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966).

. 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966).

. 382 U.S. at 365, 86 S.Ct. at 524.