**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

———————————————

No. 97-10665

———————————————

IN THE MATTER OF: WILLIAM E. JOHNSON,

                                        Debtor.

-----------------------------------------------

WILLIAM E. JOHNSON,

                                        Appellant,


                          versus


INTERNAL REVENUE SERVICE,

                                        Appellee.



———————————————

Appeal from the United States District Court
for the Northern District of Texas

———————————————

July 10, 1998

Before DAVIS, WIENER, and PARKER, Circuit Judges.

WIENER, Circuit Judge:

     Plaintiff-Appellant William E. Johnson ("the Debtor") appeals the holding of the bankruptcy court, as affirmed by the district court, that Defendant-Appellee Internal Revenue Service ("IRS") is entitled to collect post-petition interest accruing on the Debtor's nondischargeable taxes from the filing date of his initial

bankruptcy petition, regardless of when and what amount of pre-petition nondischarged taxes are paid by the trustee, until all such taxes and post-petition interest are paid in full. After a review of the record, the appellate briefs, and the applicable law, we affirm, concluding that the IRS is entitled to collect from the Debtor post-petition interest on nondischargeable taxes, from the date bankruptcy petition was filed; subject, however, to proper crediting of any interim payments to the IRS and with interest continuing to accrue on the remaining balance only.

I

FACTS AND PROCEEDINGS

In April 1988, the Debtor filed for protection under Chapter 11 of the Bankruptcy Code ("Code"). Prior to the filing of his bankruptcy petition, the Debtor and the IRS were litigating the Debtor's tax liabilities for the tax years 1979, 1981, 1983, and 1984. During the month following the filing of Debtor's petition, the IRS filed a Proof of Claim (Proof of Claim number 4) for $162,718.93. In November of that year, the Debtor's case was converted to a Chapter 7 proceeding, and a trustee was appointed. All assets of the estate were turned over to the trustee.

The following April, the Debtor received a discharge of all but his nondischargeable debts. Thus his tax liabilities were not discharged. The Debtor maintains that he wrote to the trustee on three occasions (January 4, 1990; January 16, 1990; and May 30, 1990), requesting a determination of the value of assets in the

trustee's possession and the amount necessary to discharge the IRS claim, but received no response.

In February 1990, after Tax Court determination, the IRS sent the Debtor a statement of taxes due, requesting payment for the 1983 year in the amount of $911.07. The Debtor paid this amount. In August 1990, the IRS filed a new Proof of Claim (Proof of Claim number 22), for $87,553.94, covering tax years 1979 and 1981. Three years later, in March 1993, the trustee filed his Objections to Claims, including claim numbers 4 and 22. Thereafter, the IRS filed a second amended Proof of Claim (Proof of Claim number 23) in the amount of $92,070.67, comprising taxes for each tax year at issue and identifying the tax liabilities as unsecured, priority claims. In May 1993, the bankruptcy court disallowed Proof of Claim number 4, but allowed number 22 in the amount of $64,086.28. The trustee later filed his final report.

In November 1995, the Debtor received a letter from the IRS informing him that no action could be taken on his deficiency until the trustee made his distribution. The trustee ultimately made his distribution to the IRS in January 1996, in the amount of $37,634.47 (a little more than half of its claim). Thereafter, the IRS sought to collect from the Debtor the unpaid balance of his nondischargeable tax liabilities plus post-petition interest on his entire tax liabilities from the date of the filing of his original petition.

In July 1996, the Debtor brought an action in the bankruptcy court to determine the amount of pre-petition nondischargeable tax owed the IRS, as well as any post-petition interest and penalties due.  In September of that year, the Debtor paid all outstanding pre-petition taxes, interest, and penalties for the tax years 1979, 1980, 1981, and 1983, but presumably nothing for post-petition interest.  The bankruptcy court then granted the IRS's motion for summary judgment, holding the Debtor liable for post-petition interest on the entire amount of nondischargeable taxes from the petition date, regardless of when and what amount of the pre-petition nondischarged taxes had been paid by the trustee.  The district court affirmed, and this appeal followed.

II

ANALYSIS

A.  Standard of Review

Acting as a second review court, we consider the bankruptcy court's findings of fact under the clearly erroneous standard, and that court's conclusions of law de novo.[1]

B.  Arguments of the Parties

There now appears to be some disagreement as to the precise issues on appeal.  We address those points raised in the parties' briefs, as amplified —— and somewhat modified —— by the oral arguments of counsel.

---

[1]Matter of U.S. Abatement Corp., 79 F.3d 393, 397 (5th Cir. 1996).

4

In his appellate brief, the Debtor submits that he should only be liable for post-petition interest on the unpaid balance of nondischargeable taxes <u>from the date of payment to the IRS by the trustee</u>, not from the petition date. Any holding to the contrary, he contends, would be inconsistent with the Code's "fresh start" philosophy and would lead to situations in which a debtor emerges from bankruptcy without any possessions and with more debt than when he sought bankruptcy protection. Further explaining his position, the Debtor urges that "it is the intent of Congress as evidenced by the Bankruptcy Tax Act of 1980 . . . that interest not accrue post-petition on non-discharged tax indebtedness until the Chapter 7 trustee distributes funds in his possession or closes the estate."

At oral argument, the Debtor framed the issue somewhat differently, as evidenced by the following colloquy between members of the panel and the Debtor:

> Panel Member: [O]n the monies that were paid by the Trustee and subsequently by your client, has any interest been charged from the date of payment on that amount?
>
> Attorney: . . . The interest that's been charged has been on the entire amount of the Proof of Claim that was allowed of $64,000 from the date of filing until today.
>
> . . . .
>
> Other Panel Member: Even though half of it was paid?
>
> Attorney: That's correct, even though the trustee made a distribution.
>
> Panel Member: So payment did not stop the running of any

5

interest or did not credit against accrued interest?

Attorney:   That is what the Notice of Levy came to my client on.   That the payment was basically a payment of the interest that was already being charged; it wasn't accredited [sic] back.

Panel Member: So if he had paid 100%, it would have stopped the interest?  If he had paid $1 less than 100%, interest would have run on 100%?

Attorney:  . . . [Y]ou're correct, your Honor.  Yes, that is what the facts showed, your Honor. . . .

Panel Member:  So this payment had no effect whatsoever on accrued or future accruing interest?

Attorney:  <u>That is our problem, your Honor.  That is the sole issue</u> that the court seems to be . . . .

Other Panel Member:  Is your answer to that question yes?

Attorney:  Yes, your Honor.  And that's that is our sole issue here.  The question that we are here is . . . .

Panel Member:   Well now the issue you presented originally was that because of bankruptcy there could be no accruing of any interest, if I understood it correctly?

Attorney:   Well, I'm not sure that was correct, your Honor.

Panel Member:  Post-petition.

Attorney: Post-petition, that on nondischargeable taxes, that the Trustee pays, our argument was there should be no accrual of interest.

Panel Member:  Well you made a broader statement than that though.  You said that if, and correct me if I misunderstood your position as the plaintiff in this thing . . . is that post-petition there would be no accrual of interest on pre-petition taxes owed because of the fresh start and all that business.

Attorney:  That would be too broad a statement of what if that's how it came across, your Honor.  That wasn't what the intention was.

Panel Member:  <u>So the only thing you're complaining about is that these interim payments had no effect on the continuing accrual of pre-petition tax liabilities accruing post-petition?</u>  Is that a fair statement?

Attorney:  <u>Right.</u>  The issue of whether the debtor is liable for post-petition interest on the entire amount of the Proof of Claim allowed of $64,000 from the date of filing, which was April of 1988, until present, because they're still charging interest, your Honor, despite the fact all pre-petition taxes, penalties, and interest have been paid either by the trustee or the Debtor.

Other Panel Member:  Let me see if I can understand it in rounded off dollar amounts:  64,000 rounded off . . . was the total Proof of Claim pre-petition tax liability . . . 37,600 is the amount that the trustee paid the IRS . . . 37 from 64 is 27, so you agree that you owe interest . . . for the entire time period on the 27?

Attorney:  No, your Honor.  We agree that we owe interest on the 27 from the date the Trustee made his distribution until the date it was paid by the Debtor which was September 96.  The IRS has requested interest from 1988 to present on the whole 64.  We have said . . . the IRS is entitled to interest on the 27,000 . . . clearly nondischargeable pre-petition debt, and I think that it's agreed that they're entitled to post-petition interest on that amount but only from time period the trustee made the distribution until the Debtor made the final payment which was in September of 96.

Panel Member:  <u>So you're still maintaining that because the trustee dillydallied, that you shouldn't have to pay interest?</u>

Attorney:  <u>Yes</u>.

The Debtor acknowledges that the seminal case under the Code's predecessor, the Bankruptcy Act, on the question of the dischargeability of post-petition interest — the Supreme Court's decision in <u>Bruning v. United States</u>[2] — and its progeny stand for

---

[2]376 U.S. 358, 84 S. Ct. 906, 11 L. Ed. 2d 772 (1964).

the proposition that post-petition interest on nondischarged taxes continues to accrue against the Debtor.[3]  He contends, however, that Bruning did not address the calculation of post-petition interest and penalties or the question whether post-petition payments must be deducted from the principal amounts used for such calculations.[4]

Moreover, according to the Debtor, courts recently have been trying to evaluate what should happen to post-petition interest that accrues during the proceedings of a bankruptcy.  Pointing to In re Winchell[5] and In re Heisson,[6] the Debtor advances that in the

_____

[3]See e.g., In re Hanna, 872 F.2d 829 (8th Cir. 1989); In re Burns, 887 F.2d 1541 (11th Cir. 1989).  The Debtor further contends that Bruning establishes that you must look at —— i.e., give credit to —— what was paid by the estate, something he contends Hanna and Burns "overjump."  Bruning, 376 U.S. at 362, 84 S. Ct. at 908 ("But the instant case concerns the debtor's personal liability for postpetition interest on a debt for taxes which survives bankruptcy to the extent that it is not paid out of the estate.").

[4]In re Quick, 152 B.R. 909 (Bankr. W.D. Va. 1993).  The bankruptcy court noted that "[t]he appropriateness of how the [IRS] determined the amount of interest and penalty stated to be owing . . . was left unresolved . . . ."  Id. at 910.  As such, an order was entered directing the IRS to show its calculations.  It was then established that the IRS "calculated both post-petition interest and failure to pay penalty on the declining principal balance of the unpaid income tax and that the amount sought from the debtors included failure to pay penalties that accrued while the debtors' chapter 13 case was pending."  Id.  The court held that "the debtors [were] not liable for accrued post-petition penalties on their pre-petition tax debt which were incurred while their chapter 13 case was pending."  Id. at 912.

[5]200 B.R. 734 (Bankr. D. Mass. 1996)  The bankruptcy court analyzed Code §§ 1129(a)(9)(C) and 1141(d)(2) in concluding that personal liability for interest on nondischargeable taxes does not survive confirmation of the debtor's plan of reorganization.  Id. at 739-40.  The court's ruling discharged the post-petition

Chapter 11 context interest is allowed only as to the unpaid portion of the indebtedness.[7]  The Debtor submits that this unpaid interest can be collected after the trustee has made his distribution.  He contends that the rationale of both these cases is directly relevant to a Chapter 7 proceeding when the trustee pays the debtor's nondischargeable taxes from the debtor's funds.  Applying both cases, the Debtor concludes that he is only liable for interest on the unpaid portion of his obligation from the date

interest that accrued on the nondischarged taxes.  Id. at 740.

[6]192 B.R. 294 (Bankr. D. Mass. 1996), rev'd and vacated, United States v. Heisson, 217 B.R. 1 (D. Mass. 1997).  Similar to In re Winchell, the bankruptcy court in In re Heisson concluded that the IRS was not entitled to post-petition, pre-confirmation interest on nondischargeable priority taxes following confirmation of a Chapter 11 plan proposing to pay the taxes in full with interest from the date of confirmation.

[7]The Debtor also relies on Matter of Irvin, 95 B.R. 1014 (Bankr. W.D. Mo. 1989)(holding that Chapter 7 debtors had no liability for post-petition interest and penalties on their nondischargeable tax obligations which had been or would be wholly paid from the bankruptcy estate), rev'd, In re Irvin, 129 B.R. 187 (W.D. Mo. 1990).  The bankruptcy court declared that "[t]he amount which may be collected subsequent to bankruptcy is the principal amount which remains unpaid at the conclusion of the bankruptcy proceedings and the interest thereon . . . .  It makes little sense to permit the collection of interest on amounts paid out of the estate, but which are delayed through the necessities of estate administration and through no fault of the debtor."  95 B.R. at 1019.  The IRS correctly observes that the district court reversed the bankruptcy court's ruling in In re Irvin, concluding that the debtors were liable to the IRS for post-petition penalties and interest on pre-petition tax liabilities.  129 B.R. at 191.  The court was unpersuaded by the fact that the trustee had paid the unpaid taxes in full.  The district court further commented that the debtor was not being penalized for using the bankruptcy process, but instead for his failure to pay prior to using that process.  Id. at 189.

of such distribution, not from the date he filed his bankruptcy petition. The Debtor further advances that his position is supported by the IRS's letter acknowledging that the precise amount owed by the Debtor could not be calculated until the trustee made his distribution.

Additionally, the Debtor emphasizes that he bears no fault for the long delay in making distributions; rather, because of attrition and payments to the trustee, the trustee's attorney, and the trustee's accountant, only about half of the IRS's original claim got paid and then only years later. The Debtor states that he tried desperately to have the trustee inform him regarding the IRS liability, but the trustee waited almost nine years to disburse funds to the IRS. The Debtor also contends that he tried to contact the IRS, which waited for over a year before informing him that it was unable to proceed until it received its distribution from the trustee.

In response, the IRS insists that the district court correctly affirmed the bankruptcy court's holding that the IRS can collect from the Debtor all post-petition interest that accrued on the Debtor's nondischargeable tax debt during the administration of the estate, i.e., from the date his petition was filed. Invoking the language of § 727,[8] the IRS notes that a debtor in Chapter 7 proceedings generally obtains a discharge from all debts arising

_____

[8] 11 U.S.C.A. § 727 (West 1993).

10

before the petition was filed, except those debts provided in § 523. It further observes that § 523(a)(1)(A) excepts from discharge debts for pre-petition income tax liabilities not yet assessed but still assessable.[9] Thus, urges the IRS, inasmuch as the income tax liabilities asserted against the Debtor were assessed after the petition date, they fell within the discharge exception for income tax liabilities still assessable at the time of filing.

The IRS takes the position that a debtor remains liable for interest on a nondischargeable debt and that accrual of interest is not interrupted by or suspended during the pending of the bankruptcy proceedings. Indeed, urges the IRS, the interest that accrues constitutes an integral part of the underlying tax claim and is generally treated the same as the underlying claim.[10] It points out that, under § 502(b)(2), unmatured (i.e., post-petition) interest is not allowed against the bankruptcy estate.[11] The IRS

---

[9]Specifically, § 523 excepts from discharge taxes entitled to priority under §§ 507(a)(2) and 507(a)(8). 11 U.S.C.A. § 523(a)(1)(A) (West Supp. 1998). Under § 507, "[t]he following expenses and claims have priority in the following order: . . . (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—— (A) a tax on or measured by income or gross receipts . . . not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case . . . ." 11 U.S.C.A. (a)(8)(A)(iii)(West Supp. 1998).

[10]Bruning, 376 U.S. at 360, 84 S. Ct. at 908; Hanna, 872 F.2d at 830.

[11]In re Fullmer, 962 F.2d 1463, 1467 (10th Cir. 1992); Hanna, 872 F.2d at 830.

11

contends, nevertheless, that the law is settled that if a debt is not discharged, the interest accruing thereon post-petition survives bankruptcy as a personal liability of the debtor.[12]

Furthermore, insists the IRS, the facts here are indistinguishable from those of Bruning. In that case, the debtor paid the IRS only a portion of the taxes owed. Following the debtor's discharge in bankruptcy, the IRS attempted to collect the balance of its assessment, including interest accrued during the bankruptcy case. The debtor contended that he was not liable for interest accrued after his petition was filed. The Supreme Court held that post-petition interest on an unpaid tax debt that is not discharged remains, after bankruptcy, a personal liability of the taxpayer.[13] The IRS urges that even though Bruning was decided under the predecessor Bankruptcy Act, its reasoning and its holding remain viable under the Code and control this case.

The IRS also relies on In re Hanna, in which the Eighth Circuit considered whether, under the Code, post-petition interest could be enforced as a continuing nondischargeable obligation against a Chapter 7 debtor following liquidation. Determining that, when taken together, §§ 502 and 523 demonstrate Congress's intent to codify the general principle of Bruning, the Hanna court

---

[12]Fullmer, 962 F.2d at 1468; Hanna, 872 F.2d at 830-31; Burns, 887 F.2d at 1543. See also, Bruning, 376 U.S. at 363 (same under former Bankruptcy Act).

[13]376 U.S. at 363, 84 S. Ct. at 909.

12

concluded that post-petition interest is nondischargeable and remains a personal liability of the debtor subsequent to bankruptcy proceedings.[14] The Hanna court noted that, in balancing the interests of creditors, debtors, and the government with regard to taxes and interest on such, Congress "determined that the problems of financing the government override granting debtors a wholly fresh start."[15]

The IRS maintains that the cases on which the Debtor relies provide him no support. Specifically, the IRS contends that In re Heisson and In re Winchell — both Chapter 11 cases — are distinguishable and, in any event, were wrongly decided. In Chapter 11, § 1129(a)(9)(C) requires that, within six years following assessment, holders of allowed priority unsecured tax claims receive deferred cash payments in an amount equal to the allowed claim as of the effective date of the plan.[16] The IRS states that these payments include an adequate interest component. The Heisson and Winchell courts reasoned that, with respect to post-petition interest on nondischargeable debts, § 1129(a)(9)(C), which authorizes payment of a claim over a six year period in accordance with a plan, was in conflict with § 1141(d)(2), which provides that confirmation of a Chapter 11 plan does not discharge

---

[14]Hanna, 872 F.2d at 831.

[15]Id.

[16]11 U.S.C.A. § 1129(a)(9)(C)(West Supp. 1998).

13

a debtor from debts exempted from discharge under § 523.[17] Concluding that the two provisions could not be reconciled, both courts determined that post-petition interest on nondischargeable taxes following confirmation of a Chapter 11 plan should be deemed discharged.

The IRS posits that, as this is a Chapter 7 liquidation case and not a Chapter 11 reorganization, § 1129(a)(9)(C) is inapplicable.[18] As such, these cases do not assist the Debtor. That aside, the IRS insists that those two cases were incorrectly decided. The IRS disagrees with the courts' finding of irreconcilable conflict in the two provisions, urging that they merely operate in different spheres. On one hand, § 1129(a)(9)(C) governs how the allowed amount of a priority unsecured tax claim is to be paid under a Chapter 11 plan. This allowed amount excludes post-petition interest accrued between the commencement of the case and plan approval. The IRS contends, however, that disallowance of such a claim in the bankruptcy case does not affect the debtor's continued personal liability if the interest is accruing on a nondischargeable debt. Section 1141(d)(2), on the other hand, preserves the debtor's liability for post-petition interest and other nondischargeable debts. According to the IRS, § 1129(a)(9)(C) does have meaning, as it governs payment on <u>allowed</u>

---

[17]11 U.S.C.A. § 1141(d)(2)(West 1993).

[18]<u>See</u> 11 U.S.C.A. § 103(f) (West 1993).

14

priority unsecured claims and is not meaningless simply because it does not govern payment of undischarged debts that are not allowed.

As for the Debtor's attempts to place blame on the trustee, the IRS responds first that the Debtor could have sought his removal. Similar to the Debtor here, the debtors in In re Irvin argued that the IRS should not be allowed to collect interest from their after-acquired property because it was the bankruptcy process itself that was the cause for delay. The court rejected this argument, stating:

> where a debt is owed before the bankruptcy petition is filed, as in Bruning, Benson, and the case at hand, it cannot be said that the debtor is not responsible for the delay. See Bruning, 376 U.S. at 360, 84 S. Ct. at 907. The debtor is not being penalized for his assertion of the bankruptcy process, but for his failure to pay before the bankruptcy process was utilized.[19]

Finally, regarding the Debtor's claims that liability for the interest accumulated on his tax debt during the administration of his bankruptcy case would prejudice his "fresh start," the IRS insists that a higher priority is placed on revenue collection than on a debtor's rehabilitation or fresh start.[20]

---

[19]In re Irvin, 129 B.R. at 189.

[20]See Bruning, 376 U.S. at 361, 84 S. Ct. at 908 ("[Section] 17 is not a compassionate section for debtors. Rather, it demonstrates congressional judgment that certain problems —— e.g., those of financing government —— override the value of giving the debtor a wholly fresh start. Congress clearly intended that personal liability for unpaid tax debts survive bankruptcy."); Matter of Fein, 22 F.3d 631, 633 (5th Cir. 1994)("[I]n the case of individual debtors, Congress consciously opted to place a higher priority on revenue collection than on debtor rehabilitation or

15

At oral argument, counsel for the IRS assured the panel that, although she had no personal knowledge whether the payments made by the trustee and the Debtor had been credited to interest, she was certain that proper credit had been given the Debtor for these payments. We cannot determine from the record, however, whether the Debtor received credit for these payments; we have located no document in the record that purports to be an accounting by the IRS of what was owed, what has accrued, what has been paid, or what is now owed and accruing interest. Counsel for the IRS further made clear, however, that while she had never understood the nature of this case to be misapplication or nonapplication of payments by the IRS, a Debtor is liable for interest up to the time that the entire amount of indebtedness is paid, but is entitled to credit for interim payments. Illustrating this concept, a member of the panel inquired, "Let's say there's a $100,000 in principal and interest due the Service and the taxpayer comes in and pays $50,000. Well, are you telling us that until the second 50 is paid, he has to pay interest on the entire 100?" Counsel responded, "[n]o sir, he pays interest on the [remaining] 50 [only]."

Following oral argument, the IRS filed a supplemental letter brief, asserting that the issue of the calculation of the Debtor's liability by the IRS was resolved to the satisfaction of the parties in the bankruptcy court. As support, the IRS points to

ensuring a 'fresh start.'").

16

(1) the government's motion for summary judgment filed in the bankruptcy court, and (2) the stipulated final judgment.

In its motion for summary judgment, the IRS stated:

> At the status conference held on August 26, 1996, <u>debtor's counsel requested an expedited adversary proceeding and indicated he would not dispute the calculation of debtor's liability</u> at such proceeding and would, instead, solely assert that debtor's liability, as computed by the IRS, should be discharged under legal or equitable grounds. Accordingly, the resolution of this motion in favor of the Service should resolve the adversary proceeding in full.[21]

In his response to the IRS's motion, the Debtor listed the following as disputed issues:

> a. Did the Debtor's payment of tax year 1983 tax pursuant to the IRS tax bill eliminate all taxes for 1983?
>
> b. Has the IRS credited Debtor's account for the $1,500.00 payment made in 1991?
>
> c. From what date is the IRS entitled to seek post-petition interest from the Debtor?
>
> d. On what amount is the IRS entitled to seek post-petition interest from the Debtor?

Next, the IRS points to the agreed judgment entered by the bankruptcy court, which addresses the remainder of the Debtor's complaint for declaratory judgment not resolved by the court's grant of the IRS's motion for summary judgment. The court stated that "[t]he parties have advised the Court that they have reached a final agreement regarding the remainder of this Complaint as set

---

[21]ROA, vol. 2, p. 13 (emphasis added).

forth below. The Court has concluded that the parties' agreement as set forth in [the] Agreed Judgment should be approved." As such, the court ruled as follows:

> 1. The Internal Revenue Service assessments for income taxes, interest and penalties on debtor's 1979, 1981, 1983 and 1984 income tax years are correct, except that the assessments made on debtor's 1983 income tax year in the amounts of $597.40, $83.77 and $474.91, said assessments reflected on debtor's 1983 income tax account as of October 24, 1989, shall be abated, and any resulting credits shall be applied to offset other items on such account or to debtor's other tax liabilities.
>
> 2. The Internal Revenue Service has properly credited all payments made by debtor prior to the date of the Complaint. (emphasis added).
>
> 3. All relief not specifically granted in this Agreed Judgment is denied.

The IRS contends that at no time between entry of the stipulated final judgment and oral argument on appeal had the Debtor ever disputed the calculation of his tax liabilities; rather, he merely challenged the propriety of having interest accrue "post-petition on non-discharged tax indebtedness until the Chapter 7 trustee distributed funds in his possession or closes the estate." The IRS urges that, as the Debtor did not dispute, either in the district court or on appeal to this court, whether the IRS properly credited his and the trustee's payments, any representations at oral argument by the Debtor's counsel to the contrary are inconsistent with the agreed judgment. Finally, the IRS insists that under the "consent-to-judgment" waiver doctrine, the Debtor cannot now question the IRS's crediting of his payment,

18

which he previously acknowledged as being proper.[22]

C. Conclusion

Joining the other circuits that have addressed the issue,[23] we begin by holding that for this circuit the Bruning rule continues to apply under the Code, i.e., post-petition interest accruing on nondischargeable tax debts is itself nondischargeable and the debtor remains personally liable for that interest following completion of bankruptcy proceedings. Stated differently, "creditors may accrue as to the debtor personally post-petition interest on nondischargeable debts while a bankruptcy

---

[22]Tel-Phonic Servs., Inc. v. TBS Intern., Inc., 975 F.2d 1134, 1137 (5th Cir. 1992)("A party will not be heard to appeal the propriety of an order to which it agreed."); Hunt v. Bankers Trust Co., 799 F.2d 1060, 1066 (5th Cir. 1986). Moreover, the IRS asserts that we should not review any error which was waived by consent, and if all errors complained of come within the waiver, the judgment must be affirmed. Pacific R.R. v. Ketchum, 101 U.S. 289, 295, 11 Otto 289, 25 . Ed. 932 (1880).

[23]See Pardee v. Great Lakes Higher Educ. Corp., 218 B.R. 916, 921 (9th Cir. 1998); Leeper v. Pennsylvania Higher Educ. Assistance Agency, 49 F.3d 98, 101-02 (3d Cir. 1995); Fullmer v. United States, 962 F.2d 1463, 1468 (10th Cir. 1992); Burns v. United States, 887 F.2d 1541, 1543 (11th Cir. 1989); Hanna, 872 F.2d 829, 831 (8th Cir. 1989); Bradley v. United States, 936 F.2d 707, 709-10 n.3 (2d Cir. 1991)(stating in dictum that the weight of authority supports the view that a debtor is personally liable for post-petition interest on unpaid taxes). But see In re Reich, 66 B.R. 554, 557-58 (Bankr. D. Colo. 1986), rev'd, 107 B.R. 299 (D. Colo. 1989) and In re Frost, 19 B.R. 804, 810 (Bankr. D. Kan. 1982)(stating that "[t]he notion that any creditor can show up at the debtors' doorstep after discharge is granted and attempt to collect a discharged debt is . . . offensive to the concept of the debtor's fresh start . . . ." and concluding that "the IRS cannot collect . . . post-petition interest from the debtors after receipt of a discharge."), vacated on relevant ground as unripe, 47 B.R. 961 (D. Kan. 1985).

19

is pending."[24]  We agree with the Eighth Circuit's conclusion in

Hanna, also a Chapter 7 case, that

> [t]aken together, sections 502 and 523 simply demonstrate
> Congress' intent to codify the general principle that
> applied under Bruning.  Post-petition interest is
> disallowed against the bankruptcy estate under section
> 502.  Priority tax claims remain nondischargeable for
> individual debtors.  Under both the Act and the Code,
> Congress attempted to balance the interests of the
> debtor, creditors and the government, and in the instance
> of taxes and interest on such, Congress has determined
> that the problems of financing the government override
> granting debtors a wholly fresh start.  H.R. Rep. No.
> 595, 95th Cong., 2d Sess. at 274 (1978), reprinted in
> 1978 U.S. Code Cong. and Admin. News 5963, 6231.  Thus,
> post-petition interest is nondischargeable, and [the
> debtors] remain personally liable for that interest
> subsequent to bankruptcy proceedings.[25]

We note that two of the bankruptcy court cases on which the

Debtor relies —— Matter of Irvin and In re Heisson —— were

subsequently reversed by the district courts that reviewed them.

The district court in Heisson reasoned that, as there was no

dispute that the underlying debt to the IRS was nondischargeable

and the IRS did not seek to collect gap interest from the estate,

the reasoning in Bruning applied.[26]  Similarly, the district court

---

[24]Leeper, 49 F. 3d at 102 (3d Cir. 1995).

[25]Hanna, 872 F.2d at 831.

[26]Heisson, 217 B.R. at 4 (relying on a number of Bankruptcy Act
cases, including: United States v. River Coal Co., Inc., 748 F.2d
1103, 1106-07 (6th Cir. 1984) (extending Bruning to gap interest ——
i.e., post-petition, pre-confirmation interest —— on
non-dischargeable tax debts in Chapter 11 proceedings where the tax
claim was paid in full under the plan); In re Jaylaw Drug, Inc.,
621 F.2d 524, 528 (2d Cir. 1980) (same); Hugh H. Eby Co. v. United
States, 456 F.2d 923, 925 (3d Cir. 1972) (same); and In re Johnson
Electrical Corp., 442 F.2d 281, 283-84 (2nd Cir. 1971)(same))(also

20

rejected the bankruptcy court's distinguishing of <u>Bruning</u> based on the fact that it dealt with nondischargeable claims that were only partially paid in the bankruptcy proceeding, whereas, in the case at hand, the claims were to be fully paid in the bankruptcy proceedings.[27] The district court concluded that, "[t]he nature and purpose of interest does not change simply because the underlying debt is satisfied or fully provided for under the plan."[28]

As to the precise point at which post-petition interest begins to accrue, we understand "post-petition interest" to mean exactly that — i.e., interest that accrues immediately from and after the filing of the bankruptcy petition. We find no authority for the

---

relying on a number of decisions under the Code, including: <u>Leeper</u>, 49 F.3d at 104; <u>Fullmer</u>, 962 F.2d at 1468; <u>Burns</u>, 887 F.2d at 1543; <u>Hanna</u>, 872 F.2d at 831; <u>In re Willauer</u>, 192 B.R. 796, 801 n.4 (Bankr. D. Mass. 1996); <u>JAS Enters.</u>, 143 B.R. 718, 719 (Bankr. D. Neb. 1992); and <u>In re Fox</u>, 130 B.R. 571, 575 (Bankr. W.D. Wash. 1991). <u>But see</u> <u>In re Wasson</u>, 152 B.R. 639, 642 (Bankr. D. N.M. 1993)).

[27]<u>Id.</u> (relying on <u>River Coal</u>, 748 F.2d at 1107; <u>Eby</u>, 456 F.2d at 925 ("That the underlying taxes were later paid in full here does not affect the fact that appellant had the use of the Government's money during the period of the reorganization proceeding, and that since the underlying debt is not discharged by operation of Section 17 of the Bankruptcy Act, 11 U.S.C. § 35 (1964), neither is the interest which accrues by reason of the use of such money during the pendency of the proceedings."); <u>Johnson Electrical</u>, 442 F.2d at 284 (stating that the distinction between post-petition interest where the underlying tax is partially paid and where it is fully paid "is not sufficiently substantial to warrant a different result. Either the filing of the petition stops the running of interest on federal tax claims against a bankrupt or it does not.").

[28]<u>Heisson</u>, 217 B.R. at 4.

21

Debtor's position that post-petition interest does not begin to accrue until disbursement of funds by the trustee.

Finally, with regard to credit for the interim payments, we observe that, while the IRS's argument that the Debtor waived any right to challenge its calculation of the debt may be attractive in that it would pretermit that consideration, counsel for the IRS assured the panel that, although she did not know whether the payments were credited to interest, she would assume they were; she also stated that a taxpayer should be credited for partial payments and that she was certain that the money has been credited to the Debtor for the Trustee's payment and the Debtor's subsequent payment. Any amounts paid by the trustee or the Debtor in the way of partial, interim payments, must reduce either accrued interest or the principal tax debt, or both, depending on the discrete facts,[29] and, to the extent that principal tax debt is reduced,

---

[29]Regarding the application of the payments, we note in passing that "[u]nder [a] long-standing IRS policy, taxpayers may designate the application of tax payments that are voluntarily made, but may not designate the application of involuntary payments." United States v. Pepperman, 976 F.2d 123, 127 (3d Cir. 1992)(citing Rev.Rul. 79-284, 1979-2 C.B. 83; Rev.Rul 73-304, 1973-2 C.B. 42; Matter of Ribs-R-Us, 828 F.2d 199, 201 (3d Cir. 1987)). "An involuntary payment traditionally has been defined as 'any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.'" Id. (citing Amos v. Commissioner, 47 T.C. 65, 69 (1966)(emphasis in Pepperman)). "Most courts . . . have concluded that payments made in the bankruptcy context are involuntary." Id. (citations omitted). The Third Circuit "conclude[d] . . . that payments made to the IRS out of a Chapter 7 debtor's estate are involuntary." Id. In so determining, the court took into consideration the fact that "the trustee was not free to withhold payment for taxes." Id.

22

interest will thereafter accrue only on the remaining balance due.

III

CONCLUSION

For the foregoing reasons, we affirm the district court's decision to the extent that it holds (1) post-petition interest is nondischargeable, (2) it accrues from the filing of the petition, and (3) the Debtor has continuing liability for such interest. We hold in addition that the Debtor is entitled to credit for any payments made, as of the dates paid, applicable first against accrued interest and then against principal, with interest continuing to accrue only on the net balance remaining unpaid; and we remand this cause to the district court for the limited purpose of its verifying that the appropriate credits were given and, if not, amending its judgment to effectuate such credits and reflect their effect on the amount of the post-petition interest remaining due and payable.

AFFIRMED and REMANDED with instructions.