In re William E. BURFORD, Debtor.

William E. Burford, Plaintiff,

v.

District Director, Dallas District, Internal Revenue Service, Defendant.

Bankruptcy No. 389–32079–SAF–11.
Adversary No. 398–3587.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

March 24, 1999.

James L. Schutza, Addison, TX, for plaintiff.

Ralph F. Shilling, Jr., Department of Justice, Dallas, TX, for defendant.

### MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

In this action for declaratory and injunctive relief, the court must determine whether the debtor, William E. Burford, remains liable for interest on pre-petition taxes accruing after the filing of his bankruptcy petition. Burford's Chapter 11 plan of reorganization, as confirmed by order of this court, requires that Burford pay the United States "in an amount sufficient to ... fully retire the debt" to the United States. Burford has nearly completed his plan payments but the Internal Revenue Service maintains he owes $48,-277.17 of post-petition interest not included in his plan payments.

The court conducted a trial on January 20, 1999. This memorandum opinion contains the court's findings of fact and conclusions of law. Bankruptcy Rule 7052. The parties submitted a stipulation of facts, which the court adopts (copy attached). This adversary proceeding raises a core matter over which this court has jurisdiction to enter a final order or judgment. 28 U.S.C. §§ 157(b)(2)(B) and (I) and 1334.

Burford filed a joint plan with his corporation, Texas Art Gallery, Inc. Burford owed the government for unpaid 1988 individual income taxes. The plan proposed to pay the government "$800.00 per month beginning in October, 1991, and continuing until the debt is paid. The balance will bear interest at the rate of 10% per annum." The government objected to this treatment.

Following an evidentiary confirmation hearing, the court entered an order on January 22, 1992, confirming a joint plan with the requirement that

Burford shall pay to the Internal Revenue Service the amount of his personal income

taxes for the tax year 1988 over a period of six (6) years, with the first payment being due on or before December 31, 1991. Payments shall be in an amount sufficient to amortize and fully retire the debt within the six-year period by making payments on a monthly basis prior to the last day of each and every calendar month. The initial installment shall be in the amount of $1,300.00, but subsequent installments shall be adjusted to take into account reductions in the amount of the remaining debt, whether by reason of refunds for subsequent years or other prepayment.... The remaining balance of the indebtedness shall bear interest of ten percent (10%) per annum.

On December 19, 1991, before confirmation, debtor's counsel sent the IRS amended tax returns for the years 1988, 1989 and 1990, with a cover letter informing counsel for the IRS that Burford would make the first $1,300.00 payment but that subsequent payment amounts would be modified. The debtor made the $1,300.00 payment.

Thereafter, the IRS, pursuant to the confirmation order, credited amounts to the 1988 tax debt and then informed Burford that his required monthly payment pursuant to the plan would be $974.86.

Burford contends that after he pays the 59 monthly payments of $974.86 he will have paid the 1988 individual income tax debt in full. The government maintains, however, that the IRS did not include post-petition interest on the 1988 taxes in its amortization schedule provided to Burford, leaving $48,277.17 due after plan payments.

Although this adversary proceeding compels the court to analyze provisions of the Bankruptcy Code, in the end, the parties are bound by the court order and their actions of seven years ago.

The government defends its amortization amount by contending that the IRS could not file a proof of claim including unmatured interest on the 1988 individual income tax debt. As a result, the IRS calculation of the plan payments did not include that interest. Since the taxes would not be discharged, the IRS maintains it may proceed against Burford to collect the interest. Burford argues, however, that his pre-petition tax liability includes the interest until paid. His plan, as confirmed by the court, required that he pay the tax debt in full. The IRS provided the amortization schedule. He contends he has made his payments. Accordingly, he argues that the debt has been paid and the government should be estopped from claiming any further amount due.

The commencement of a bankruptcy case creates a bankruptcy estate against which creditors may file claims existing as of the date of the bankruptcy petition. The Bankruptcy Code defines a claim as a right to payment. 11 U.S.C. § 101(5). Burford filed his petition for relief under Chapter 11 of the Bankruptcy Code on April 11, 1989. On that date, the United States had a right to payment from Burford for 1988 individual income taxes. Non-bankruptcy law establishes the right to payment, the claim. Under the Internal Revenue Code, Burford's tax obligation included interest and penalties on the unpaid underlying taxes. 26 U.S.C. § 6601. Accordingly, the government had a right to payment from Burford on the date of the filing of the bankruptcy petition for the unpaid 1988 taxes including interest and penalties until paid. Under the Bankruptcy Code, the United States could file a proof of that pre-petition claim. 11 U.S.C. § 501(a).

The government contends that the Bankruptcy Code prohibits the filing of a proof of claim for the full amount of its right to payment established under non-bankruptcy law. The Code, however, contains no such prohibition. The government confuses the amount of its claim with the treatment of its claim under the Code. Under § 502(a), the filed proof of claim is deemed allowed absent an objection. The government could file a proof of claim for the full amount of the tax obligation established under the Internal Revenue Code. Absent an objection, that claim would be allowed for treatment purposes under the Bankruptcy Code. But, in the event of an objection, the bankruptcy court must determine the amount of the claim in lawful currency and allow the claim in that amount "except [as here relevant] to the extent that such claim is for unmatured

interest." 11 U.S.C. § 502(b)(2). Consequently, in the event of an objection, the court could not allow the government's claim to the extent it included the post-petition interest, even though non-bankruptcy law provides the government with a right to that payment.

The government asserts that it actually holds two claims, one for the pre-petition principal tax due plus pre-petition interest and penalties and one for post-petition interest on the pre-petition tax. The government confuses its pre-petition claim under non-bankruptcy law with the post-petition treatment of the claim under the Bankruptcy Code and the corresponding discharge provisions of the Code. Under the Internal Revenue Code, the government has one claim for unpaid taxes including interest and penalties until paid. The Internal Revenue Code does not distinguish between claims and allowed claims under the Bankruptcy Code.

The bankruptcy estate makes distributions based on the allowed claims. In the Burford case, the government's claim for the 1988 individual income tax held a priority over other unsecured claims. 11 U.S.C. § 507(a)(8). In a Chapter 11 case, the court may confirm a plan of reorganization if, as here relevant, the plan provides for payment on a priority tax claim under § 507(a)(8) by a series of payments "equal to the allowed amount of such claim." 11 U.S.C. § 1129(a)(9). Thus, for income taxes, had the government filed a claim for the entire tax obligation and no party in interest objected, the allowed claim to be paid under § 1129(a)(9) to confirm a plan would be the entire obligation. But, in the event of an objection, the allowed claim would not include the unmatured interest as of the petition date.

Confirmation of a plan under Chapter 11 "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1). The Bankruptcy Code defines a "debt" as "liability on a claim." 11 U.S.C. § 101(12). A claim is a right to payment. 11 U.S.C. § 101(5). Accordingly, a discharge relieves the debtor, in effect, of his liability on a claim.[1] Burford

was liable to the government on its entire right to payment, not just the portion of the right to payment allowed for purposes of the Bankruptcy Code. A discharge under Chapter 7, 11 U.S.C. § 727, or Chapter 11, 11 U.S.C. § 1141, does not discharge an individual debtor from any "debt" for a priority tax under 11 U.S.C. § 507(a)(8). 11 U.S.C. §§ 523(a)(1) and 1141(d)(2). Thus, while the Bankruptcy Code provides for distributions on claims as allowed pursuant to the Code, the Code further provides that the debtor's liability for certain claims will not be discharged, if the claim is not paid. Of course, if the claim is paid in full, non-bankruptcy law relieves the debtor of liability. As discussed above, if the bankruptcy estate's payment of an allowed priority tax claim does not fully satisfy the claim, § 523 preserves the debtor's non-bankruptcy law liability for the unpaid part of the tax claim.

In this case, the government filed a proof of claim for 1988 taxes for $75,024.68 as a priority unsecured claim and $875.65 as a general unsecured claim. Burford did not object to the claim. Under § 502(a), the claim in those amounts was deemed allowed. Burford proposed a plan to pay the government $800.00 per month until the debt was paid, with 10% per annum interest. The government objected to the payment schedule but not the interest rate. In response, Burford proposed a plan to "fully retire the debt." Under the Bankruptcy Code, that means he proposed to pay his liability on the government's right to payment for the 1988 individual income taxes. He did not propose to pay the government's allowed priority claim in full. He did not propose to pay the proof of claim in full. He proposed to pay "the debt" in full.

The court entered an order requiring, as part of the joint Burford–Texas Art Gallery plan, that Burford pay the Internal Revenue Service the amount of his personal income taxes for the tax year 1988 over six years "in an amount sufficient to amortize and fully retire the debt." The court ordered an initial payment of $1,300.00, which Burford paid. The court ordered the IRS to offset

---

1. Actually, the discharge enjoins collection on a debtor's liability on a claim.

and credit refunds, which the IRS did. Burford deferred to the IRS to then provide the monthly amortization schedule to comply with the court's order, which the IRS provided. The IRS informed Burford that his required monthly payment pursuant to the plan would be $974.86.

Under §§ 1141(d)(2) and 523(a)(1), Burford's liability for the 1988 taxes would not be discharged by the plan. But payment of the debt would satisfy Burford's liability for the taxes. The court's order required Burford to make payments sufficient to fully retire the "debt" for the 1988 taxes. That is the "debt" excepted from discharge under §§ 1141(d)(2) and 523(a)(1). The court's order therefore contemplated that compliance with this plan would satisfy Burford's liability to the government for the 1988 taxes.

■ The plan as confirmed by this court's final order binds Burford and the United States. 11 U.S.C. § 1141(a); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987). The United States filed its proof of claim. The proof of claim was deemed allowed. The plan as confirmed by the court deferred to the United States to provide the amortization schedule necessary to fully retire the debt on the 1988 taxes. The United States provided that payment schedule. Burford argues that the United States cannot now, seven years later, assert that a different payment schedule was necessary to fully retire the debt. When Burford pays the amount under his plan, he will have complied with the plan. When he does so, he argues that he must be deemed to have fully retired the debt that would have otherwise not been discharged. To hold otherwise, he maintains, would permit a collateral attack on the confirmation order. The confirmation order should preclude the United States from contending that the amortization schedule does not fully retire the debt. The actions taken by the United States to calculate and provide the amortization schedule, even if done erroneously, should estop the United States from contending that additional payments must be made to fully retire the debt. Burford argues that the IRS cannot undermine a court order for its own purposes.

Burford also contends that any part of the debt not actually paid has been discharged. As the court discusses below, that is not a correct statement of the law.

■ The government contends, however, that Burford must remain personally liable for the post-petition interest on the pre-petition 1988 taxes. Post-petition interest accruing on a non-dischargeable tax debt is itself non-dischargeable. If not paid by the bankruptcy estate, the debtor remains personally liable for that interest following completion of bankruptcy proceedings. *Matter of Johnson*, 146 F.3d 252, 260 (5th Cir.1998). Applying *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), to the Bankruptcy Code, the Fifth Circuit joins other circuits in holding that creditors may accrue, as to the debtor personally, post-petition interest on non-dischargeable debts while a bankruptcy case is pending. *Matter of Johnson*, 146 F.3d at 260. Adopting the policy articulated in *In re Hanna*, 872 F.2d 829, 831 (8th Cir.1989), the Circuit opined that Congress determined that the problems of financing the government override granting debtors a wholly fresh start. Thus, post-petition interest is non-dischargeable and the debtor remains personally liable for that interest after the bankruptcy proceeding. *Matter of Johnson*, 146 F.3d at 260.

But *Johnson*, like *Hanna*, addressed the liquidation and payment of claims in a case under Chapter 7 of the Code. Indeed *Bruning* involved a liquidation under the Bankruptcy Act. The Fifth Circuit apparently assumed that the Chapter 7 bankruptcy estate lacked the assets to pay claims in full. The court further assumed that the trustee would object to the government's proof of claim, if it contained a request for unmatured interest, pursuant to § 502(b)(2). The trustee would then make a distribution of estate assets to the government that pays only the allowed priority claim; the remainder would not be discharged, § 523(a)(1), and the debtor would remain personally liable. This protects creditors at the bottom rungs of the priority ladder. *Hanna*, 872 F.2d at 830. The public policy of excepting unmatured interest from an allowed claim for purposes of a distribution from the bankruptcy estate

is premised on a finite bankruptcy estate incapable of paying in full all claims as determined under non-bankruptcy law.

Chapter 11 reflects, to a degree, those policies. To be confirmed, unless the government agrees to a different treatment, the plan must pay the allowed amount of the priority unsecured tax claim. Assuming § 502(b)(2) has been invoked by an objection to a proof of claim, the allowed amount will exclude post-petition interest accrued between the commencement of the case and plan approval. Section 1141(d)(2) preserves the debtor's liability for the remainder of the claim, including post-petition interest.

But a Chapter 11 plan proponent may devote resources beyond the assets of the bankruptcy estate to fund a plan. Under a plan, the property of the estate may revest in the debtor with the debtor using that property to generate future resources exceeding the value of the bankruptcy estate to fund a plan over time. More often than not, plan distributions exceed the dividends available to creditors from the bankruptcy estate under a liquidation under Chapter 7 of the Code. The debtor, as plan proponent, may devote assets over an extended period of time to pay claims in excess of that required to confirm a plan under § 1129. Burford, in a joint plan with Texas Art Gallery, Inc., has done that. The United States fails to address that substantial difference from the public policy articulated in the lead cases under Chapter 7.

As confirmed by this court, Burford's plan requires payments sufficient to fully retire the tax debt. It therefore requires payments in excess of that necessary to pay the allowed priority claim under § 502(b)(2) as mandated by § 1129(a)(9)(C). To confirm the plan, this court found that Burford, with his business, would more likely than not generate sufficient income to meet that plan obligation. *Order Confirming Plan* p. 1; 11 U.S.C. § 1129(a)(11). This case does not involve a finite bankruptcy estate incapable of fully retiring debts on tax claims determined under non-bankruptcy law. The public policy concern of protecting creditors at the bottom rungs of the priority ladder does not apply. Those creditors participated in the confirmation process.

Consequently, this case involves a contract between Burford and the United States, the plan as confirmed by court order, requiring Burford to fully retire the debt for personal income taxes for the tax year 1988 within the six year plan payout. If Burford complies with the plan, then as a matter of final court order and contract between Burford and the government, he must be deemed to have fully retired the debt. The Bankruptcy Code does not limit the plan to the minimum required payment for confirmation, here defined by § 1129(a)(9)(C). The Burford plan does not propose to fully retire the allowed unsecured priority claim of the United States, leaving the balance of the debt to Burford's non-discharged personal liability. Rather, it proposes to fully retire the debt, the liability on the government's right to payment as defined by non-bankruptcy law. The United States accepted that provision and provided the amortization schedule. The debt has not been discharged, as Burford argues. Rather, compliance with the court's order and the plan results in the debt being deemed to have been fully retired.

The United States relies heavily on the decision by the United States District Court in *U.S. v. Heisson,* 217 B.R. 1 (D.Mass.1997), reversing the decision of the bankruptcy court reported at 192 B.R. 294 (Bankr. D.Mass.1996). *Heisson* involved a Chapter 11 plan. The order confirming the plan provided that the IRS shall be deemed to have a secured and priority claim in a certain sum to be paid over six years at 10% interest. 192 B.R. at 295. "Shortly after confirmation," the IRS informed the debtor that it would seek collection of the post-petition interest outside the plan but that it would delay collection until the debtor completed the plan payments. 217 B.R. at 2. The district court recognized that § 1129(a)(9) dealt with allowed claims, whereas § 1141(d)(2) excepted the entire tax debt from discharge. The bankruptcy court had found that § 502(b)(2) effectively discharged the interest. But the district court rejected that reading of the Code. Section 502(b)(2) excepts the unmatured interest from the allowed claim, but §§ 1141 and 523 address the discharge of the debt. The district court concluded that the

unpaid interest survived the plan even though the debtor paid the underlying principal tax obligation through the plan. The district court's referral to satisfaction of the "underlying debt" in the plan must mean the principal tax debt, without interest and penalties. As the bankruptcy court's opinion explains, the plan paid the priority claim, presumably as allowed under § 502(b)(2), meaning without the unmatured interest.

*Heisson* provides little guidance for this case since Burford must pay an amount sufficient to fully retire the debt, as contrasted with a plan that requires payment of the allowed priority claim. The debtors in *Heisson* argued to the district court that the IRS should be estopped from collecting the unpaid post-petition interest. The debtors asserted that the IRS had negotiated the tax claim with the debtors and that the IRS could have filed an amended proof of claim to protect its interest. But the district court rejected both arguments, holding that the government did not concede interest in its negotiations and the government could not file a proof of claim to include unmatured interest. 217 B.R. at 5. This court must accept the district court's characterization of the parties negotiations in *Heisson*, but this court respectfully disagrees with the district court's conclusion that the Bankruptcy Code prohibits the government from filing a proof of claim for unpaid taxes plus interest and penalties applicable under non-bankruptcy law. Section 501 anticipates a claim based on a right to payment under non-bankruptcy law. Section 502 addresses allowance of claims for bankruptcy purposes.

In this case, as Burford argues, the government provided the amortization schedule to fully retire the debt. The court entered the confirmation order on January 22, 1992. The United States did not move for relief from that order nor did the United States appeal that order. Indeed, why would the United States do either? The order provided for the full retirement of the subject tax debt. The United States had objected to the debtor's plan proposal that paid a lesser amount. In response, the court confirmed a plan to fully retire the debt.

But the implementation of the plan went even further. The Internal Revenue Service determined the payment schedule. After application of credits and offsets, the IRS provided the debtor with the monthly payment amount pursuant to the plan. The government stipulates to and concedes this fact.

The confirmation order binds the United States. 11 U.S.C. § 1141(a). The United States may not collaterally attack the order at this late date. *Shoaf, supra.* The Internal Revenue Code establishes that the taxpayer's liability for unpaid taxes includes interest and penalties until paid. The Bankruptcy Code defines debt as liability on a claim. This court's order mandates that Burford pay the amount of his personal income taxes for the tax year 1988. The order requires that plan payments shall be in an amount sufficient to amortize and fully retire the debt. An amortization schedule means periodic payments of interest and principal owed on a debt obligation. *Black's Law Dictionary* 83 (6th ed.1990). In 1992 the Internal Revenue Service provided the amortization schedule. If the United States collects additional amounts on the debt from Burford then the United States would undermine a final order of this court.

Not until the autumn of 1998 did the United States contend or inform Burford that it had not provided him with an amortization schedule sufficient to fully retire the debt as required by the confirmation order. Apparently, the Internal Revenue Service calculated the monthly payments by amortizing the underlying principal tax debt and interest up to the petition date, plus the post-confirmation interest, but did not include the post-petition to confirmation interest. If so, the government erred. But Burford contends the United States must be estopped from contending that the amortization payment does not fully retire the debt.

■ Generally, a court will apply the doctrine of estoppel if (1) the party to be estopped was aware of the facts, and (2) intended its act or omission to be acted upon; (3) the party asserting estoppel did not have knowledge of the facts, and (4) reasonably relied on the conduct of the other to his

substantial injury. *Taylor*, 132 F.3d 256, 263 (5th Cir.1998), quoting *United States v. Bloom*, 112 F.3d 200, 205 (5th Cir.1997). The court tried this case on stipulated facts. Those facts establish that Burford lacked knowledge of the full extent of his 1988 tax liability but knew that the IRS would credit certain refunds to that liability. Burford did not have the facts sufficient to calculate the amortization schedule to fully retire the debt. Burford deferred to the IRS to provide the amortization schedule. The IRS knew what the debt would be under the Internal Revenue Code. The IRS had the information to apply the credits and calculate the amortization schedule. The IRS had the court's order. The IRS calculated the payments necessary to comply with the court's order. The IRS provided Burford with the monthly payment amount. The IRS intended that Burford act on the information it provided. Burford relied on that information to comply with the confirmation order. Burford has been making his plan payments in substantial compliance with that order and the payment schedule provided by the IRS. Burford had several options at confirmation concerning the debt. He structured a plan with Texas Art Gallery to address his tax obligation in the context of several difficult and pressing creditor and business issues. For example, Burford originally proposed to pay a lower amount to the IRS in his plan. Those payments would not have fully retired the debt, but he did not propose that result. He would have deferred personal liability but would have had other resources to invest in his business to generate income to address that deferred obligation. The IRS objected to that plan. In response Burford agreed to fully retire the debt, thereby altering his business plan. He would now be injured by having to address obligations factored into a complex plan of reorganization. He would have to pay interest on interest that his plan eliminated. The economics of that plan included fully retiring the tax debt. The court finds that the four traditional elements for application of the estoppel doctrine have been established.

■■■ Courts, however, disfavor the application of estoppel against the government. *DePaolo v. United States (In re DePaolo)*, 45 F.3d 373 (10th Cir.1995). Thus, in order to establish estoppel against the government, Burford must also prove affirmative misconduct by the government. *Taylor*, 132 F.3d at 263. "Affirmative misconduct means an affirmative act of misrepresentation or concealment of a material fact. Mere negligence, delay, inaction, or failure to follow agency guidelines does not constitute affirmative misconduct." *DePaolo*, 45 F.3d at 377.

■■■ The government failed to accurately and fully calculate the amount of Burford's liability to fully retire the debt. The court infers from the stipulated facts that the government erred; it assumed that it could not receive full payment of the debt in a plan because of § 502(b)(2) and it failed to comply with or understand the confirmation order. The court cannot infer from the stipulated facts that the government intentionally deceived Burford or maliciously ignored the court's confirmation order to amortize payments to fully retire the debt. But the government knew that Burford's debt exceeded any limitation on an allowed claim under § 502(b)(2) and it knew that any unpaid debt would not be discharged under §§ 1141(d)(2) and 523(a)(1). Thus it must be held to knowledge of what the court's order to fully retire the debt meant. Even though the government did not maliciously fail to provide Burford with the amortization schedule to comply with the court's order, the effect of its deliberate actions will undermine the finality and binding effect of a court order. The misconduct standard should be broad enough to encompass a government action that would cause the undermining of a court order that cannot be collaterally attacked. The government provided the payment amount to Burford for Burford to perform under a court order to amortize and fully retire the debt. The government deliberately, albeit not maliciously, failed to provide the correct payment amount. Objectively, a court should not sanction that as right conduct. Hence, for purposes of the application of the doctrine of estoppel, that conduct must be construed as misconduct.

The lead cases rejecting the preclusive effect of a confirmation order on collection of

interest on pre-petition taxes and declining to estop or enjoin government collection efforts must be scrutinized to determine precisely the facts of the case. In *Taylor*, 132 F.3d 256, the debtor filed a disclosure statement and plan in which he proposed to treat any claims for taxes or penalties asserted by the IRS as discharged, even without payment. The IRS had filed, but subsequently withdrew, a proof of claim for unpaid personal income taxes. The IRS asserted no other claims. The court approved the disclosure statement and confirmed the plan. Although the IRS received a copy of the plan, it chose not to participate in the confirmation hearing. Thereafter, the IRS notified Taylor that a penalty of over $96,000 would be assessed against him based upon the failure of Marshall Mill, the company for which Taylor served as president and manager, also in bankruptcy, to pay withholding taxes. Taylor argued that the IRS should be estopped from proceeding against him and that his plan of reorganization should be given res judicata effect. The Fifth Circuit rejected both contentions. The Circuit rejected preclusion because the IRS had not been engaged by the debtor in the claims allowance process. The Court rejected estoppel because the debtor did not establish IRS misconduct. The facts of the instant case are quite different. In this case, the IRS not only filed a proof of claim, but actively participated in the confirmation process. But beyond that, and dispositively, the court ordered payments to fully retire the debt. Burford deferred to the IRS to provide him with the monthly amounts needed to fully retire his debt and comply with the confirmation order, which Burford believed he was doing for the past six years. Burford did not himself supply the numbers to retire the debt. Rather, Burford deferred to the IRS to supply him with the amounts needed to fully retire his debt.

In *DePaolo*, 45 F.3d 373, the IRS filed a proof of claim for what it believed to be the debtors' tax liability. The debtors filed a plan in which they proposed to pay the IRS the "*allowed amount* of such claim." *Id.* at 374 (emphasis added). The parties then stipulated to the amount of the allowed claim and the IRS amended its proof of claim to con-

form to the stipulation. The IRS did not object to the plan and the court confirmed the plan. Nearly three years after the court entered an order closing the bankruptcy case, the IRS issued a notice of deficiency to the debtors reflecting that the debtors owed an additional $12,000 in taxes, plus additions to tax in the amount of $2,024. Like the debtor in *Taylor*, the debtors in *DePaolo* argued that principles of equitable estoppel and res judicata prohibited the IRS from assessing additional taxes because the bankruptcy proceedings fully and finally determined the amount of their tax liability. The Tenth Circuit declined to apply either doctrine. *DePaolo* involved the bankruptcy concept of an "allowed" claim. A plan providing for payment of an "allowed" claim differs from a plan providing for payments to "fully retire the debt." The Tenth Circuit recognized that payment of an "allowed" claim could leave the debtor liable for payment of the rest of the claim under non-bankruptcy law. In *DePaolo*, the debtors and the IRS agreed on the amount of the "allowed" claim. The Tenth Circuit does not hold that if the debtors and the IRS had agreed to a plan to fully retire the debtors' tax liability as defined under the Internal Revenue Code and the IRS erred in its calculation of that amount that preclusion or estoppel would not be appropriate. Unlike *DePaolo*, this case does not deal with payments of an allowed claim with the balance of the debt excepted from discharge. This case involves a plan to fully retire the debt, with the IRS providing the amortization schedule.

In *United States v. Gurwitch (In re Gurwitch)*, 794 F.2d 584 (11th Cir.1986), the IRS filed a proof of claim for a combination of income and withholding tax liabilities, part of which the debtor disputed. The court confirmed a plan of reorganization which provided for payment of 100% of the IRS claim. But before the case was closed, the IRS began collection efforts for the withholding taxes and the debtor continued to dispute liability. The IRS placed a lien on the debtor's real estate holdings for payment of the tax claims. The debtor contended the IRS should be precluded and estopped from collecting the taxes. The Eleventh Circuit disa-

greed, holding that the unpaid taxes were excepted from discharge and the debtor should expect collection efforts. The debtor in *Gurwitch* disputed the IRS claim, whereas Burford not only acknowledged his debt to the IRS, he deferred to the IRS to set the amount owed and inform him of that determination. The IRS did that. Burford complied with the IRS' determination. In the same way that "a reasonable debtor should expect that the IRS will seek to enforce [nondischargeable taxes]," *Gurwitch*, 794 F.2d at 586, Burford should expect, and be able to rely on the fact, that the IRS would provide information sufficient to permit him to comply with the court's order.

In *Fein v. United States (Matter of Fein)*, 22 F.3d 631 (5th Cir.1994), the IRS did not file a proof of claim for tax liabilities prior to confirmation of the plan, but instead, issued a notice of deficiency to the debtor nearly three months after confirmation. In *Fein* the IRS did not file a proof of claim, but chose instead to pursue its claim outside of bankruptcy. As described above, the IRS not only filed a claim and participated in Burford's plan confirmation process, it also provided Burford with the amortization schedule to comply with the court order.

And, an additional observation about the United States' reliance on *Heisson*. In *Heisson*, the IRS informed the debtor "shortly after confirmation" of its decision to seek collection of post-petition interest outside the plan. Here, however, the government did not communicate with Burford until six years after confirmation. During that time, Burford made plan payments with the understanding that the IRS had provided an amortization schedule to fully retire the debt, as required by the confirmation order. The government's actions taken pursuant to this plan, coupled with the passage of time and Burford's substantial compliance with the plan, should estop the government from now contending that the plan payments do not fully retire the debt.

The court finds misconduct by the IRS under the facts and circumstances of this case. In doing so, the court has analyzed the Fifth Circuit and other circuit decisions requiring misconduct to estop the government.

The IRS deliberately provided Burford with the amount required to comply with the court's order. It's deliberate actions followed an erroneous reading of the Bankruptcy Code and the court's order. But, with that reading, the IRS intended that Burford's payments not comply with the court's order. The IRS intended that Burford pay less than the debt. By doing so, the IRS undermines a court order causing Burford to pay additional interest on interest. Since the Fifth Circuit's decision, Congress has tasked the IRS with serving taxpayers in a more helpful manner. *See* IRS Restructuring and Reform Act of 1998, Pub.L. No. 105–206. This public policy should broaden the misconduct standard in circumstances such as this. The court finds that Burford has established all the elements necessary to apply the estoppel doctrine to the government.

 The court does not find estoppel based on the proof of claim filed by the government. The court has rejected the government's contention that its proof of claim cannot include interest on taxes until paid, but the court does not base its holding on the government's decision not to include interest in its proof of claim. Indeed, the Bankruptcy Code does not compel the Internal Revenue Service to file a proof of claim, nor, if it does file a proof of claim, to include the entire claim. The Internal Revenue Service could have chosen not to file a claim to participate in bankruptcy distributions and still had the debt excepted from discharge. And had the IRS taken that position, the debtor could have filed a proof of claim on its behalf. Rather, the court finds estoppel in this case because of the preclusive effect of a confirmation order requiring the debtor to fully retire the tax debt coupled with the actions taken by the IRS to provide the amortization schedule necessary for the debtor to comply with that requirement. Without estoppel, the government's actions would result in the undermining of a court order not subject to collateral attack.

The court also notes that this case does not involve a plan attempting to bind the government to an allowed or restructured claim outside of the claims allowance process. Indeed, the confirmation order does not ad-

dress the amount of the claim. Rather, it orders the payment of amounts sufficient to fully retire the debt. The order deferred to the parties to fix the amount. The debtor deferred to the IRS. Also, the plan does not provide for a discharge of the debt. This decision is not about discharge; it is about the actions of the parties taken following a binding court order not subject to collateral attack.

## Conclusion

Unlike the circumstances where a bankruptcy estate does not pay a priority tax claim in full as determined under the Internal Revenue Code, leaving the debtor personally liable for the unpaid portion of the claim, the Chapter 11 plan as confirmed by the court in this case requires that the debtor fully retire his liability to the government on its right to payment under the Internal Revenue Code. That order fully protects the government. That order is entitled to finality, precluding attack. But the order did not provide the amount of payments necessary to fully retire the debt. Rather, the United States provided the debtor with the amortization schedule pursuant to the plan. The United States cannot, objectively, be permitted to undermine or circumvent a court order, whether directly or indirectly. With the passage of time and the near completion of plan payments, the United States should be estopped from contending that the amortization schedule submitted pursuant to a court order requiring payments of amounts sufficient to amortize and fully retire the debt does not do just that. Even though the government did not act maliciously, it acted deliberately, albeit on an erroneous view of the Bankruptcy Code. In doing so, if not estopped, it would harm Burford by causing him to pay unnecessary interest on interest. The United States should not profit by supplying Burford with facts he relied on to comply with a court order that would instead undermine the requirements of that order.

## Order

Based on the foregoing,

**IT IS ORDERED** that the debtor shall have a judgment declaring that payment of amounts provided by the United States and pursuant to the plan of reorganization as confirmed by the order entered January 22, 1992, shall be deemed to fully retire the debt to the Internal Revenue Service for personal income taxes for the tax year 1998.

**IT IS FURTHER ORDERED** that the debtor shall have a judgment permanently enjoining the United States from collecting, after payment of the remaining plan payments, any additional amount on account of personal income taxes for the tax year 1988.

Counsel for the debtor shall prepare a final judgment consistent with this order.